IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In the Matter of: | : |
| MARK BRANNAN and | : Case No. 02-16647-MAM |
| KELLY BRANNAN, | : Chapter 13 |
| Debtors. | : |
| MARK BRANNAN and | : |
| KELLY BRANNAN, | : |
| Plaintiffs, | : |
| v. | : |
| WELLS FARGO HOME MORTGAGE, INC., | : Adversary Proceeding No. 04-01037 |
| Defendant. | : |

DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant Wells Fargo Home Bank, N.A.[1] ("Wells Fargo") files this supplemental brief in support of its motion to dismiss in order to address further some of the issues discussed at the hearing and in plaintiff's brief.

Summary

Bankruptcy Code § 105 and the Court's inherent powers give it the ability to take actions to manage its own cases and enforce provisions of the Bankruptcy Code, but they simply empower the Court and do not constitute a cause of action in themselves. There is no private, independent cause of action for "abuse of the bankruptcy process" (other than a state law abuse

---
[1] Wells Fargo Home Mortgage, Inc. merged into Wells Fargo Bank, N.A. effective May 8, 2004 and is now a division of the bank rather than a separate corporation.

of process claim which plaintiffs have not made). Likewise, there is no independent damages claim for "fraud on the court"; the litigant's remedy in that situation is to move to set aside the order in question pursuant to FRCP 60(b) (made applicable by Bankruptcy Rule 9024) or, in more limited circumstances, to file an independent action to set aside the order. Absent it being set aside, the Court's conditional stay denial order is binding on all parties and they cannot collaterally attack it.

The Court cannot enter sanctions for actions which took place in other courts, and this Court does not have jurisdiction to enter relief which would countermand orders entered by other courts.

Finally, the plaintiffs have not produced a single case or statute holding that what they allege defendant did was illegal. The Bankruptcy Code and Rules do not even require that statements submitted in support of a lift stay motion be verified or notarized.

I. Bankruptcy Code § 105 and the "inherent powers" of a court do not constitute or create an independent, private cause of action.

Under Bankruptcy Code § 105, the Court may issue any order "that is necessary or appropriate to carry out the provisions of this title." Additionally, courts have inherent powers which arise independently of any statute or rule to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases. . . ." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 115 L.Ed.2d 27 (1991). See also Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539, 1553-54 (11th Cir. 1996) (bankruptcy courts also have these inherent powers). A court's inherent powers include the contempt power as well as

2

Case 04-01037    Doc 21    Filed 05/20/04    Entered 05/20/04 17:29:09    Desc Main
Document    Page 2 of 15

> the power of a federal court to control admission to its bar, punish parties for contempt, vacate <u>its own judgment</u> upon proof that a fraud has been perpetuated upon the court, bar a disruptive criminal defendant from the courtroom, dismiss an action on grounds of forum non conveniens, act sua sponte to dismiss a suit for failure to prosecute, and assess attorney's fees against counsel.

<u>Glatter v. Mroz (In re Mroz)</u>, 65 F.3d 1567, 1575 (11th Cir. 1995) (emphasis added).

Section 105 and the Court's inherent powers thus give it the ability to control its own cases and its own courtroom, but they do not themselves create a private cause of action; the cause of action must come from somewhere else in the Bankruptcy Code. For example, in <u>Bessette v. Avco Financial Services, Inc.</u>, 230 F.3d 439, 444-447 (1st Cir. 2000), the court of appeals found, as this Court has in other cases, that § 105 enables a bankruptcy or district court to order sanctions in the class action context when dealing with "violation of a purely statutory order" -- there, the discharge injunction imposed by Bankruptcy Code § 524. 230 F.3d 445-46. The court specifically noted: "Thus, § 105 does not itself create a private cause of action, but a court may invoke § 105(a) 'if the equitable remedy utilized is demonstrably necessary to preserve <u>a right elsewhere provided in the Code</u>.'. . . ." 230 F.3d at 444-445 (quoting <u>Noonan v. Secretary of Health and Human Services</u>, 124 F.3d 22 (1st Cir. 1997) (emphasis added)). <u>See also</u> <u>In re Cline</u>, 282 B.R. 686 (N.D. Wash. 2002) ("Section 105 does not itself create a private right of action"); <u>Holloway v. Household Automotive Finance Corp.</u>, 227 B.R. 501, 505 (N.D. Ill. 1998) ("§ 105(a) does not authorize a private right of action on its face"). Many courts have followed the Fifth Circuit's frequently-quoted holding that § 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." <u>U.S. v. Sutton</u>, 786 F.2d 1305, 1308 (5th Cir. 1986).

It is true that Section 105 allows a bankruptcy court to apply equitable principals that are necessary or appropriate in a particular case to carry out the provisions of the Code. See 11 U.S.C. 105. These powers, however, do not include the ability to award equitable relief <u>where the party asserting the cause of action for such relief does not have standing under any other section of the Code</u>.

<u>In re Ozark Restaurant Equipment Co., Inc.</u>, 816 F.2d 1222, 1230 (8th Cir. 1987) (emphasis added). "Bankruptcy courts cannot use their equity powers under Section 105(a) to fashion substantive rights and remedies not contained in the Bankruptcy Code or Rules or to negate substantive rights or remedies that are available." <u>Omni Manufacturing, Inc. v. Smith</u>, 21 F.3d 660, 666 (5th Cir. 1994).

In <u>In re Simmons</u>, 224 B.R. 879 (Bankr. N.D. Ill. 1998), the plaintiffs alleged that defendant Ford Motor Credit had "abused the bankruptcy process" by filing proofs of claims describing its claims as fully secured by automobiles when in fact the claims were undersecured. The court granted the defendant's motion to dismiss its claim because, as here, there was no alleged violation of a specific bankruptcy statute and thus no underlying cause of action:

> Having reviewed the cases the Debtor cites in support of her claim in Count I, the court observes that in all cases where relief under § 105(a) was granted, the court's order was in aid of either the automatic stay under § 362(a) or the post-discharge injunction under § 524(a). Both provisions explicitly prohibit certain creditor activities with respect to prepetition liabilities of the debtor. The order the Debtor requests here would perhaps streamline the process for determining secured claims, but the Code's provisions for the allowance of claims and the decision in Rash all seem to contemplate that both debtor and creditor be afforded equal opportunity to advance their interests in the valuation process. Unlike the situation in the cases on which the Debtor relies, <u>the practice complained of here has not been shown to violate any explicit statutory direction</u>. Compare In re Latanowich, 207 B.R. 326, 333 (Bankr. D. Mass. 1997) (enforcing post-discharge injunction); Wiley v. Mason (In re Wiley), 224 B.R. 58, 65-66 (Bankr. N.D. Ill. 1998) (same).

224 B.R. at 885 (emphasis added).

Because § 105 and a court's inherent powers are simply enabling mechanisms, the Court must examine whether the plaintiffs here have alleged an underlying cause of action.

II.  There is no independent cause of action for "abuse of the bankruptcy process."

There is no such cause of action as "abuse of the bankruptcy process." There is a state law cause of action for "abuse of process," whose elements under Alabama law are: (1) malice, (2) existence of ulterior purpose, and (3) wrongful use of process. Hamilton v. Board of School Commissioners, 993 F.Supp. 884 (S.D. Ala. 1996). The plaintiffs here have studiously avoided making this state law claim, and no one has alleged or suggested any malice or ulterior purpose behind Wells Fargo's filing of a motion for relief from stay when the plaintiffs failed to make direct postpetition mortgage payments as provided in their Chapter 13 plan. "Abuse of the bankruptcy process" is cited frequently by courts as grounds under Rule 904 or Section 105 for various sanctions such as dismissal or conversion of a case, injunctions against refiling, or monetary sanctions against a party or attorney. But there is no law holding that "abuse of the bankruptcy process" allows a party to file a separate, independent suit on that basis.

Although a court has the power to discipline parties and attorneys appearing before it, the authorities which permit a court to impose such sanctions do not create an independent, private cause of action which can be brought as a separate suit. See, e.g., Port Drum Co. v. Umphrey, 852 F.2d 148, 148-49 (5th Cir. 1988) (Rule 11 does not create private cause of action); Cohen v. Lupo, 927 F.2d 363, 365 (8th Cir. 1991) ("Rule 11 sanctions must be sought by motion in a pending case; there can be no independent cause of action instituted for Rule 11 sanctions."); Hoffman v. FERMILAB NAL/URA, 205 F. Supp.2d 900, 904 (N.D. Ill. 2002) (no private cause of action under Rule 11 or state Rules of Professional Conduct); Church of Scientology Int'l v.

Kolts, 846 F. Supp. 873, 881 (C.D. Cal. 1994) (Code of Judicial Conduct does not create private cause of action); Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 69-70 (2d Cir. 1990) ("We have seen no basis for concluding that [28 U.S.C.] § 1927 was intended to permit a litigant to institute a new lawsuit to collect excess costs and fees incurred in a prior litigation."); Carbajal-Ramirez v. Bland Farms, Inc., 234 F.Supp.2d 1353, 1354 (S.D. Ga. 2001) (28 U.S.C. § 1927 does not create private cause of action); Weiss v. Johnson (In re Rolls Const. Co.), 108 B.R. 807, 808 (Bankr. S.D. Fla. 1989) (no private cause of action under Rule 11 or 28 U.S.C. § 1927).

As the case law clearly establishes that there is no independent cause of action for abuse of court process under Rule 11, 28 U.S.C. § 1927 or other applicable authorities, there clearly is no independent right of action under the Court's inherent power to impose sanctions. See Cohen v. Lupo, 927 F.2d 363, 365 (8th Cir. 1991) (to the extent that independent claim for bad faith and abusive litigation practices exists, claim must be asserted under state common law tort of malicious prosecution).

III.  Likewise, there is no independent cause of action for "fraud on the court," and the plaintiffs' action constitutes an impermissible collateral attack on this Court's order conditionally denying relief from stay.

On April 25, 2003, this Court, by agreement of the parties, entered an order conditionally denying defendant's motion for relief from stay. The plaintiffs agreed to the order, did not appeal the order, and do not seek now to set the order aside. The motion for relief was a contested matter under Bankruptcy Rules 4001 and 9014, and the order denying relief from stay was a final, appealable order under 28 U.S.C. § 158. Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306 (11th Cir. 1982). The order denying relief from stay is thus a valid, lawful order

which is binding on all parties.  However, the plaintiffs now seek damages due to the entry of that order without trying to set it aside.

The plaintiffs' remedy for "fraud on the court" is to move for relief from the order under Bankruptcy Rule 9024, which provides that Federal Rule of Civil Procedure 60(b) applies in cases under the Code except for certain circumstances which are not applicable here.  Rule of Civil Procedure 60(b) provides that a court, upon motion filed within a year, may set aside a judgment for fraud, misrepresentation or other misconduct of an adverse party.  Rule 60(b) also allows a court to set aside a judgment for "fraud upon the court; " there is no time limit on setting aside a judgment on this ground.  Wright & Miller, 11 <u>Federal Practice and Procedure</u> 2d § 2870 (1995).  Mere perjury is not enough to constitute fraud on the court, which involves corruption of the judicial process itself such as bribery of a judge, improper influence on the court, or misrepresentation by counsel as an officer of the court.  <u>Id</u>.  Plaintiffs could also file an independent action to set aside the lift stay order, although the United States Supreme Court has held that an independent action for relief from an order is reserved for those rare cases of "injustice which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of <u>res judicata</u>."  <u>U.S. v. Beggerly</u>, 524 U.S. 38, 45 (1998).

Absent it being set aside, the plaintiffs here are bound by the Court's order conditionally denying relief from stay and cannot attack it collaterally.  See <u>In re Lawrence</u>, 251 B.R. 630 (S.D. Fla. 2000) (unappealed turnover order is binding on parties and cannot be collaterally attacked in subsequent contempt proceeding).

IV.   This Court cannot sanction acts committed in other cases before other courts.

The Supreme Court has recognized that a courts have inherent powers "'necessarily vested in courts to manage <u>their</u> <u>own</u> <u>affairs</u> so as to achieve the orderly and expeditious disposition of cases.'" <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991) (quoting <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630-631 (1962)) (emphasis added).  The Supreme Court explained:

> [I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.  The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself . . . .

<u>Id.</u> at 46 (internal citations and quotations omitted, emphasis added).  The Court has also noted: "Because of their very potency, inherent powers must be exercised with restraint and discretion." <u>Id.</u> at 44; <u>see also</u> <u>Glatter v. Mroz (In re Mroz)</u>, 65 F.3d 1567 (11th Cir. 1995) (bankruptcy court possesses inherent power to impose sanctions but exercises that power under the restrictive framework outlined in <u>Chambers</u>).

Because a court's inherent powers are exercised to "manage [its] own affairs" and to "police itself," a court cannot sanction a party for conduct committed before another court.  The Fifth Circuit has explained:

> [A] bankruptcy court's inherent power to punish bad-faith conduct does not extend to actions in a separate state court proceeding. The state court proceeding in the instant case is completely collateral to the proceedings in bankruptcy court. The conduct of the parties in the state action cannot be said to affect the exercise of the judicial authority of the bankruptcy court or limit the bankruptcy court's power to control the behavior of parties and attorneys in the litigation before it. Inherent power must arise from the litigation before that court. Although the

> substantive issue in the state court proceeding is the same, the conduct of the parties in that suit is unconnected to the present action. The district court erred in affirming that portion of the sanction representing attorney's fees incurred in the state court action under the bankruptcy court's inherent power.

Matter of Case, 937 F.2d 1014, 1023-1024 (5th Cir. 1991); see also Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995) (rejecting request for sanctions arising from affidavit filed in separate case and stating: "[T]he district court did not have the power to sanction conduct that occurred in a different court in a different case."); In re VIII South Michigan Assoc., 175 B.R. 976 (N.D. Ill. 1994) (bankruptcy court lacked ability under inherent power to sanction non-party expert witness who had not appeared before the court).

As is the case under the inherent powers, a court cannot impose Rule 11 sanctions for conduct which occurred before another court. The Eleventh Circuit has explained:

> Rule 11 sanctions are properly applied only to cases before the court, not to cases in other courts. If Rule 11 sanctions are warranted in a subsequent lawsuit brought by the plaintiff or his attorneys, it is the job of the court hearing the subsequent lawsuit--and not the court in this case--to impose such sanctions.

Woodard v. STP Corp., 170 F.3d 1043, 1045 (11th Cir. 1999); see also Weiss v. Johnson (In re Rolls Const. Co.), 108 B.R. 807, 808 (Bankr. S.D. Fla. 1989) ("It would seem beyond reasonable dispute that the District Court in Illinois should be the sole judge of whether conduct in proceedings before that court amounted to abusive conduct, whether such abusive conduct warrants Rule 11 sanctions, and precisely what those sanctions should be."); Cohen v. Lupo, 927 F.2d 363, 365 (8th Cir. 1991) ("Rule 11 sanctions must be sought by motion in a pending case"); McCampbell v. KPMG Peat Marwick, 982 F. Supp. 445, 447 n.3 (N.D. Tex. 1997) ("Rule 11 does not apply to conduct that occurred in state court before removal.").

Plaintiffs' counsel have characterized the claims asserted in this case as arising under the Court's inherent power or contempt power. In the parallel Thigpen v. Matrix Fin. Servs. Corp. case, Adv. No. 04-01035, counsel for plaintiffs stated: "Whether this action is considered one for civil contempt or brought pursuant to the powers of the bankruptcy court as granted by § 105, it is clear that this action is a core proceeding." (Memorandum in Opposition to Motion to Withdraw Reference at 9). It is well-established that only the court before which conduct occurred can hear an action for contempt arising from the conduct. The former Fifth Circuit explained: "A proceeding for contempt springs out of a litigation instituted in a particular court. Its principal object is to secure obedience to the orders of that court, by punishing as a contempt disobedience thereof. It is the court whose judgment or order has been defied which must try the contempt and pronounce judgment." Dunham v. United States, 289 F. 376, 378 (5th Cir. 1923) (emphasis added); see also Lubrizol Corp. v. Exxon Corp., 871 F.2d 1279, 1290 (5th Cir. 1989) ("We are aware of no basis upon which a district court may assert subject matter jurisdiction over violations of orders issued in other federal courts"); Williams v. Sears, Roebuck & Co., 244 B.R. 858 (S.D. Ga. Bankr. 2000) (violation of discharge injunction, 11 U.S.C. § 324, enforced through contempt proceeding and within exclusive jurisdiction of bankruptcy court); Pereira v. First North American National Bank, 223 B.R. 28 (N.D. Ga. Bankr. 1998) ("any action for violation of the automatic stay, an action arising or relating to a Title 11 case, should be brought before the proper forum, the Boston bankruptcy court that issued the automatic stay and the discharge injunction.")

This Court has recognized in the past that the exercise of jurisdiction is improper when there is a "potential trampling upon the orders or procedures of other courts." Noletto v. NationsBanc Mort. Corp., 281 B.R. 36, 46 (Bankr. S.D. Ala. 2000). "[I]f a class certification

would interfere with another bankruptcy court's power and jurisdiction and involve undermining final orders of that court, then this court should not take jurisdiction . . . ." Id.

This case does involve "potential trampling" on other courts' orders and procedures and differs from Noletto in at least three important ways.  First, the very actions complained of took place in the bankruptcy courts, that is, the filing of allegedly improper affidavits upon which the parties and the bankruptcy courts relied in agreeing to or ruling upon stay relief motions.  In Noletto, the action complained of -- assessing a "proof of claim fee" to a debtor's mortgage loan account -- took place outside the bankruptcy court and was in fact unknown to the court and the debtor (that was a large part of the problem).  Second, unlike Noletto, the relief sought here by plaintiff will necessarily require contradicting orders of other courts.  The primary monetary relief discussed by plaintiffs' counsel at the hearing on May 4th was the refund of attorney's fees awarded to creditors who have moved for relief from stay.  Any creditor's attorney's fees would have been necessarily awarded by the bankruptcy court which ruled on the stay relief motion; this Court does not have the jurisdiction to countermand another bankruptcy court's award of fees in its own case.  Finally, as discussed in Bessette v. Avco Financial Services, 230 F.3d at 445, here there is no alleged violation of a uniform statutory bankruptcy code provision which applies to all potential class members -- like § 524 in Bessette, § 506 in Noletto, and § 502 in the other proof of claim cases pending before the court.

The plaintiffs are essentially asking this Court to second-guess the admission of evidentiary materials in bankruptcy courts around the nation rather than letting them "manage their own affairs" and police themselves.  Plaintiffs' claims do not concern the administration of the Bankruptcy Code as required by section 105(a) and instead involve each individual court's consideration of evidence, discipline of parties, and management of its own affairs.

11
Case 04-01037    Doc 21    Filed 05/20/04    Entered 05/20/04 17:29:09    Desc Main
Document      Page 11 of 15

V.  <u>There is no cause of action for alleged execution of an affidavit's or declaration's signature page separately from its other pages.</u>

Actually, there is no requirement that statements submitted in support of a motion for relief from stay be verified, sworn to, or notarized. Bankruptcy Rule 9011(e) states: "Except as otherwise provided by these rules, papers filed in a case under the Code need not be verified. Whenever verification is required by these rules, an unsworn declaration as provided in 28 U.S.C. § 1746 satisfies the requirement for verification." The Code and Rules do not contain any requirement for verification related to a lift stay motion except the provision, now found in Rule 4001(a)(2), that a motion for <u>ex parte</u> relief from stay without prior notice to the debtor or trustee must be verified or supported by an affidavit. Pursuant to Code § 362(g), the movant has the burden of proving the debtor's lack of equity in the collateral, but acceptance of the movant's supporting materials is an evidentiary decision for each court which is not mandated by the Code or Rules. There is thus no cause of action related to alleged faulty verification or notarization of a statement submitted in support of a lift stay motion.

The only requirement under federal law regarding the execution of an unsworn declaration or affidavit is that, as provided by 28 U.S.C. § 1746, the signer declare under penalty of perjury that the foregoing is true and correct. <u>Dickinson v. Wainwright</u>, 626 F.2d 1184 (5th Cir. 1980). "As long as an unsworn declaration contains the phrase 'under penalty of perjury' and states that the document is true, the verification requirements of 28 U.S.C. § 1746 are satisfied." <u>Kersting v. U.S.</u>, 865 F. Supp. 669, 676(d) (Hawaii 1994). "What separates affidavits from simple statements is the certification. The requirement is not a trivial one for it subjects the affiant to perjury penalties if falsely made." <u>Adkins v. Mid-America Growers, Inc.</u>, 141 F.R.D. 466, 469 (N.D. Ill. 1992).

The same holds true for affidavits under Alabama law. "The true test of the sufficiency of a paper as an affidavit is the possibility of assigning perjury upon it if false." Sellers v. State, 50 So. 340, 341 (Ala. 1909) (quoting 1 Ency. Pl. & Pr. 310); see also Ala. Code § 13A-10-103 ("A person commits the crime of perjury in the third degree when he swears falsely."). The Alabama Supreme Court has explained: "The legal definition of the word affidavit is 'an oath in writing, sworn before some judge or officer of a court or other person legally authorized to administer it; a sworn statement in writing. To make affidavit to a thing, is to testify to it upon oath in writing.'" Watts v. Womack, 44 Ala. 605 (Ala. 1870) (quoting 1 Burrill's Law Dict. 68). Compare Taylor v. State, 48 Ala. 180 (Ala. 1872) (approving single affidavit signed by 27 persons and stating: "As many persons as choose to do so may swear in identical same words and verify their oaths by their signature, and whether the oath is written on one or many pieces of paper, makes no difference. Such an affidavit made before a notary public in this State is sufficient."); Webb v. United American Soda Fountain Co., 59 F.2d 329 (5th Cir. 1932) (noting that signature on sales and title documents need not be even signed before notary but may merely be acknowledged).

The affidavit submitted in this case was both notarized and made under penalty of perjury. The plaintiffs do not contend that any statement in the affidavit was false (unlike the cases cited in their brief, where the affiants falsely claimed to have knowledge of the facts sworn to).

The plaintiffs have cited not a single case or statute of any kind holding that the execution of a signature page separate from the body of an affidavit is a crime, against the law, an "abuse of the bankruptcy process," or a "fraud on the court." The plaintiffs are in essence asking this Court to set nationwide rules to be established ex post facto without the benefit of any signposts.

13

What are the plaintiffs asking the Court to hold, and what is the source of that law? Must the signature page be physically attached by staple to the rest of the affidavit when it is signed in order for it not to be "an abuse of the bankruptcy process" or "fraud on the court"? How about a paper clip -- is that sufficient? Can a declarant sign the signature page first, review the rest of the affidavit, and then attach the pages together, or is it always somehow a violation of law if the signature page is executed before being attached to the affidavit? Can any changes be made on an affidavit or declaration with the signer's approval after it has been signed? Or what if (as will be the situation in the instant case) the signature page was signed ahead of time but the body of the affidavit was e-mailed to the declarant, who expressly approved it in writing? What about affidavits acknowledged by telephone, which have been approved by at least two courts? See Ford Motor Credit Corp. v. Thompson Machine, Inc., 1995 Me. Super. LEXIS 261 (Me. Superior Ct. 1995); Stallings v. Poteete, 702 S.W.2d 831 (Ark. App. 1981). This area of law is a thicket into which this Court should not allow itself to be drawn and which is better handled, to the extent necessary, by individual courts familiar with applicable state laws and local practices.

<u>Conclusion</u>

For the reasons stated above, plaintiffs' claims are due to be dismissed in their entirety.

s/ Henry Callaway<br>
HENRY A. CALLAWAY, III   (CALLH4748)<br>
Attorney for Defendant Wells Fargo Bank, N.A., f/k/a<br>
Wells Fargo Home Mortgage, Inc.

OF COUNSEL:
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
(251) 694-6224

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been served upon counsel for all parties electronically and by postage prepaid, United State Mail on this the 20th day of May, 2004.

                                      s/ Henry Callaway

| | |
|---|---|
| Steve Olen, Esq. | Donald J. Stewart, Esq. |
| Steven L. Nicholas, Esq. | Cabaniss, Johnston, Gardner, |
| Royce A. Ray, III, Esq. |     Dumas & O'Neal |
| Olen, Nicholas & Copeland, P.C. | Post Office Box 2906 |
| Post Office Box 1826 | Mobile, Alabama 36652 |
| Mobile, AL 36633 | |

M: 199710
221198_1