# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:

**MARK BRANNAN and**
**KELLY BRANNAN**                              **CASE NO. 02-16647-MAM**
                                               **Chapter 13**

       **Debtors.**

---

**MARK BRANNAN and**
**KELLY BRANNAN,**

       **Plaintiffs,**

**vs.**                                        **Adversary No. 04-01037**

**WELLS FARGO HOME MORTGAGE, INC.,**

       **Defendant.**

## PLAINTIFFS' MEMORANDUM (1) IN OPPOSITION TO MOTION OF WELLS FARGO HOME MORTGAGE TO WITHDRAW REFERENCE AND (2) IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S JURY DEMAND

Plaintiffs Mark Brannan and Kelly Brannan, on behalf of themselves and all others similarly situated, submit the following Memorandum (1) In Opposition to the Motion To Withdraw The Reference And Supporting Brief filed by Wells Fargo Home Mortgage, Inc. ("Wells Fargo" or "Defendant") and (2) In Support of the Plaintiffs' Motion to Strike Defendant's Jury Demand:

# I.    Factual Background and Chronology

## A.    Plaintiffs' Bankruptcy Proceeding

On November 21, 2002, the plaintiffs filed the above-captioned Chapter 13 bankruptcy case (i.e., case no. 02-16647).   On December 18, 2002, a proof of claim was filed in the plaintiffs' bankruptcy case by Defendant Wells Fargo, identified in the claims register as Claim No. 7.   The "allowance or disallowance of claims against the estate" is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

Defendant Wells Fargo holds a mortgage on the plaintiffs' home.   On March 31, 2003, Wells Fargo filed in the Bankruptcy Court a motion for relief from the automatic stay of § 362 of the Bankruptcy Code with respect to the mortgage held by it on plaintiffs' residence.   Wells Fargo admits that it filed that motion.   (Answer, ¶ 7).   In that motion, Wells Fargo sought relief from the § 362 stay provided in the Bankruptcy Code in order to foreclose its mortgage.   "[M]otions to terminate, annul, or modify the automatic stay" are core proceedings under 28 U.S.C. § 157(b)(2)(G).

In evidentiary support of its Motion for Relief from Stay, Wells Fargo filed in the Plaintiffs' bankruptcy case a document purporting to be a notarized sworn affidavit of Teresa Diaz-Cochran. The affidavit recited that (a) Ms. Diaz-Cochran is "a duly authorized representative of Wells Fargo Home Mortgage, Inc." with the title of "Bankruptcy Specialist"; (b) Ms. Diaz-Cochran is "a custodian of records for Wells Fargo"; and (c) the facts stated in the document were "of [Ms. Diaz-Cochran's] own personal knowledge and belief, and if called upon to appear as witness, [Ms. Diaz-Cochran] could, and would, testify competently thereto."   The document contained the purported

2

sworn statement of Ms. Diaz-Cochran that she "declare[d] under penalty of perjury that to the best of [her] knowledge the foregoing facts are true and correct." *Id.*

In the disposition of Wells Fargo's Motion for Relief from Stay, the plaintiffs, plaintiffs' bankruptcy attorney and the Bankruptcy Court (i.e., Judge Mahoney) all accepted the purported sworn "affidavit" of Ms. Diaz-Cochran at face value. Wells Fargo's motion for relief from stay was conditionally denied, and the Bankruptcy Court entered a Conditional Denial Order on April 25, 2003 specifically premised on its acceptance of the purported Diaz-Cochran Affidavit as "evidence": "Evidence was presented by affidavit" and "[t]he court made findings of fact" on the basis of the Diaz-Cochran "affidavit." (April 25, 2003 Order). The Bankruptcy Court provided in the Conditional Denial Order for the filing of an amended proof of claim by Wells Fargo in the amount of the mortgage arrearage, attorneys fees, and costs supported by the "evidence." On May 27, 2003, Wells Fargo filed a "Supplemental" proof of claim for $2,086.50, the amount allowed by the Bankruptcy Court's April 25, 2003 Conditional Denial Order, which claim is identified in the claim register as claim no. 15.

## B. The Adversary Proceeding

### 1. The Complaint and Wells Fargo's Motion to Dismiss

Plaintiffs filed their Class Action Complaint in the Bankruptcy Court on February 27, 2004. The Complaint alleges that "the Defendant filed an improper and false affidavit in support of the motion for relief from stay that Defendant filed in Plaintiffs' bankruptcy case," and that "Defendant's affidavit was improper and false in that the signature page was executed separate and

3

apart from the other pages of the affidavit." (Complaint, ¶ 7). **It is noteworthy that the Defendant never contests that the separate signature page of the affidavit was indeed executed separate and apart from the other pages.**

The Complaint also alleges that "[t]he Defendant filed improper and false affidavits or declarations in the bankruptcy cases of each of the class members in support of motions for relief from stay, motions for adequate protection or similar motions filed by Defendant," and that "[t]hese affidavits and declarations were improper and false in that the signature pages were executed separate and apart from the other pages of these affidavits and declarations." (Complaint, ¶ 8). The Complaint makes class action allegations (e.g., Complaint, ¶¶ 9-15), and alleges that "Plaintiffs believe that there are thousands of individuals in whose bankruptcy cases the Defendant filed improper and false affidavits or declarations." (Complaint, ¶ 11). Plaintiffs and the putative class request relief pursuant to the Court's inherent powers and under § 105 of the Bankruptcy Code. (Complaint, ¶¶ 18, 21, 25). Plaintiffs and the putative class further allege that the Defendant's actions constitute abuse of the bankruptcy process and fraud on the court. (Complaint, ¶¶ 17, 20, 24).

The gravamen of the Complaint in this adversary proceeding is that the purported affidavit of Ms. Diaz-Cochran tendered by Wells Fargo as evidence in a core bankruptcy proceeding (see 28 U.S.C. § 157 (b)(2)(G)), and relied upon by the plaintiffs and the Court in fashioning the relief granted to Wells Fargo in the form of allowance of an arrearage claim, was bogus. The document consists of two portions: the first is a two page section setting out purported facts relating to the liability of the plaintiffs to Wells Fargo; the second is a **separate signature page** signed by Ms. Diaz-Cochran and a notary which appears to have been executed separate and apart from the other

4

pages of the affidavit -- and therefore separate and apart from any preparation or examination of the factual statements to which Ms. Diaz-Cochran was purportedly swearing.[1] Consequently, the "facts" set out in the document were not "of [her] own personal knowledge and belief" and, having never seen the "fact" portion of the document, Ms. Diaz-Cochran would have no basis to "declare under penalty of perjury that to the best of [her] knowledge the foregoing facts are true and correct."

There is a deafening silence from Wells Fargo as to the accuracy of the plaintiffs' understanding of the Diaz-Cochran document and the pervasiveness of Wells' Fargo's use of such bogus affidavits. Wells Fargo neither documents nor alleges that Ms. Diaz-Cochran ever saw the "facts" to which her notarized signature was attached. Instead, Wells Fargo filed a motion to dismiss in the Bankruptcy Court on April 6, 2004 in which Wells Fargo argues, among other things, that filing a false affidavit is "a federal crime -- not a violation of the Bankruptcy Code," and strongly insinuates that the plaintiffs, their bankruptcy lawyer and Judge Mahoney were remiss in not discerning from the face of the document that it was phony: "Plaintiffs have waived any complaints they may have about the affidavit submitted by defendant in support of its motion for relief from stay and are estopped from now complaining by their failure to raise the issue at the time and by their failure to appeal the court's ruling on that motion." Motion to Dismiss at 6-7.

Wells Fargo's "waiver/estoppel" argument is undoubtedly an attempt to persuade the Court that the Brannans' present action is untimely, even though Wells Fargo has not sought interlocutory

---

[1]The signature page of the Diaz-Cochran document has the footer "wfahsig1" which is different from the footer "8095-N-2252 rpmraff" on the previous page. Also, the pages of the affidavit are not numbered; and the signature page is on an entirely separate page even though there is enough space for Ms. Diaz-Cochran's signature on the page immediately before the separate signature page.

appeal of Judge Mahoney's denial of its motion to dismiss on the basis of alleged waiver and estoppel. Wells Fargo's position that it is not guilty of the practice alleged, but rather that the plaintiffs and Judge Mahoney should have detected Wells Fargo's misconduct at an earlier stage, ignores several very important points. The Brannans could **not** possibly have objected to the bogus affidavit submitted by Wells Fargo at or during the relief from the § 362 stay proceedings in their bankruptcy case. This is because **the Defendant did not disclose to the Brannans, their bankruptcy attorney, or to Judge Mahoney that the affidavit signature page was executed separate and apart from the other pages of the affidavit**. Consequently, Plaintiffs could not have known to object and had no reason to suspect that the affidavit filed by Wells Fargo was false. Wells Fargo's position is nonsense given that none of the material facts surrounding how the affidavit was executed were disclosed to plaintiffs or to Judge Mahoney and given that the legitimacy of the "affidavit" document was an issue that was never actually litigated in the underlying bankruptcy case.

Judge Mahoney held a hearing on May 4, 2004 on Wells Fargo's motion to dismiss this adversary proceeding after the parties had submitted briefs. On May 25, 2004, Judge Mahoney entered a four page written Order denying the Defendant's motion to dismiss and denying the Defendant's motion to stay discovery. Judge Mahoney's May 25 Order incorporates her fourteen page Order of May 25, 2004 denying the Defendant's motion to dismiss in *Thigpen v. Matrix Financial Services*, case no 04-01035, a similar class action case on her docket. Judge Mahoney found in her May 25 Order denying the motion to dismiss that "[t]his matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the court has the authority to enter a final order." Order p. 1.

## 2.    Wells Fargo's Untimely Motion to Withdraw the Reference

On June 4, 2004, Wells Fargo filed both a motion for permission to take an interlocutory appeal of Judge Mahoney's Order denying its motion to dismiss and a motion to withdraw the reference from the bankruptcy court.  Also on June 4, Wells Fargo filed a Demand For Jury Trial which, for the **very first time**, raised the issue of an alleged entitlement to a jury trial.  The timing of the defendant's motion to withdraw the reference is very suspicious and smacks of a litigation tactic rather than a bona fide claim of entitlement to a right to jury trial: Rather than advance the issue of withdrawal from the outset of this lawsuit, which was filed well over three (3) months ago on February 27, Wells Fargo waited until Judge Mahoney's ruling on the motion to dismiss and now, having received an unfavorable ruling, seeks to use the alleged right to jury trial as a basis to withdraw the reference.  It is noteworthy that Wells Fargo has carefully hedged throughout this litigation on the issue of Judge Mahoney's authority to enter final orders in the case.  The Motion to Dismiss recites only that "Defendant contends that this matter is not a 'core' proceeding," (Motion, p. 8), and the Defendant's Answer filed June 9 states only that "Defendant does not agree that this is a core proceeding."  Wells Fargo has chosen to ignore the requirement of Bankruptcy Rule 7012(b) which requires that a party asserting that a proceeding is non-core "shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge."

As an adjunct to its jury trial argument, Wells Fargo attempts to characterize this adversary proceeding as lying outside the bankruptcy court's core proceeding jurisdiction: "Because Plaintiffs claims are not dependent on bankruptcy law and could have arisen in any action, this is a non-core

7

proceeding." Wells Fargo Motion To Withdraw Reference at 5. In purported support of this contention, Wells Fargo quotes out of context language appearing in Judge Mahoney's Order Denying Stay Pending Disposition Of Motion For Withdrawal of Reference entered on May 25 in *Thigpen v. Matrix Financial Services Corporation*, Adv. No. 01035, in an effort to create the false impression that Judge Mahoney has concluded that the claims asserted in this proceeding are "non-core." Wells Fargo's effort is totally disingenuous. Judge Mahoney's Order Denying Motion To Dismiss And Denying Motion To Stay Discovery entered **in this proceeding** states clearly that **"[t]his matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the court has the authority to enter a final order."** Order, p. 1 (emphasis added). Judge Mahoney's Order Denying Motion To Dismiss And Denying Motion To Stay Discovery entered **in this proceeding** incorporates by reference the Order Denying Defendant's Motion To Dismiss And Denying Any Further Stay of Discovery entered in the *Thigpen* case. The *Thigpen* Order incorporated by reference states clearly that **"[t]his matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the court has the authority to enter a final order."** Order, p. 1 (emphasis added). The Order Denying Stay Pending Disposition Of Motion For Withdrawal of Reference entered on May 25 in *Thigpen* that Wells Fargo quotes out of context itself also states very clearly that **"[t]his matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the court has the authority to enter a final order."** Order, p. 1 (emphasis added). Judge Mahoney's conclusion is correct:

> Civil contempt proceedings arising out of core matters are themselves core matters. See Better Homes of Va., Inc., 804 F.2d at 292; Haile v. New York State Higher Educ. Servs. Corp., 90 B.R. 51, 54 (W.D.N.Y.1988); Kellogg v. Chester, 71 B.R. at 38; In re Stephen

8

> W. Grosse, P.C., 84 B.R. at 386; In re Miller, 81 B.R. at 677; but see
> In re Sequoia Auto Brokers, Ltd., 827 F.2d at 1289; Omega Equip.
> Corp. v. John C. Louis Co. (In re Omega Equip. Corp.), 51 B.R. 569,
> 574 (D.D.C.1985). Civil contempt proceedings not involving
> punishment with imprisonment have been referred to the bankruptcy
> courts in the District of Utah in accordance with 28 U.S.C. § 157.
> Therefore, the bankruptcy court below had the power to enter
> monetary sanctions against appellant for civil contempt.

*In re Skinner*, 917 F.2d 444, 448 (10th Cir, 1990). *Accord, e.g., In re Krypton Broadcasting of Ft. Pierce, Inc.*, 181 B.R. 657, 663 (Bkrtcy S.D. Fla. 1995) ("Civil contempt proceedings arising out of core matters are themselves core matters."); *In re Spanish River Plaza Realty Co., Ltd.*, 155 B.R. 249, 251 (Bkrtcy S.D. Fla. 1993) ("Civil contempt proceedings arising out of core matters are themselves core matters.").

## II. The Plaintiffs Seek Only the Non-Criminal Sanction Relief Available to Them Under 11 U.S.C. § 105 of the Bankruptcy Code

### A. Introduction

At bottom, Wells Fargo's motion is founded on an alleged claim to entitlement to a right to jury trial on the claims asserted in the Complaint. While Wells Fargo also includes the usual make-weight boilerplate bromides as to "the advancement of uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties's resources, and facilitating the bankruptcy process," the Motion at its core relates solely to Wells Fargo's claim

9

to trial by jury.[2]  Wells Fargo's Motion incorrectly asserts that "the Bankruptcy Judge has already ruled that Wells Fargo is entitled to a jury trial in this action."  Motion p. 5.  The issue of a claim to a right to jury trial was never raised in any motion or paper filed by the defendant in this proceeding prior to the bankruptcy court's Order of May 25 or prior to the filing of the Motion To Withdraw The Reference, and has never been considered by the bankruptcy court in this proceeding.  Indeed, the issue of an alleged right to jury trial **first** appeared in this case on June 4, accompanying Wells Fargo's Motion to Withdraw Reference and Motion For Leave To Appeal.  Wells Fargo's claim that the bankruptcy court has "already ruled that Wells Fargo is entitled to a jury trial in this action" is, in reality, an inappropriate attempt  to bootstrap the bankruptcy court's examination of the jury trial issue that is ongoing in *Thigpen v. Matrix Financial Services,* Adv. No. 04-01035.  In *Thigpen*, the plaintiff's pending Motion To Strike Jury Demand is currently set for hearing before Judge Mahoney on June 22, 2004.  Judge Mahoney has not entered a final ruling on the issue of entitlement to a jury in this case or in the *Thigpen* case.  And, Judge Hand entered an Order on June 14, 2004 concluding that "it would be appropriate to defer ruling on the motion to withdraw" reference pending in *Thigpen* "until the Bankruptcy Court has ruled on plaintiff's motion to strike defendant's jury demand."

---

[2]Wells Fargo's FRCP 23(f) argument discussed at pages six and seven of its Motion has already been summarily rejected by Judge Hand in *Jordan v. GMAC Mortgage*, case no. 03-CV-0557-BH-M and *Palmer v. Homecomings Financial*, case no. 03-CV-0558-BH.  Judge Hand's September 17, 2003 Orders denying motions to withdraw the reference and adopting Judge Mahoney's Reports and Recommendations in *Jordan* and *Palmer* are attached as Exhibits 1 and 2.  In addition, Judge Mahoney concluded in her May 25 Order Denying Stay Pending Disposition of Motion For Withdrawal of Reference in *Thigpen* that the defendant's "economy" argument "should not be successful at the District Court."  Order, p. 7.

10

**B.    The Complaint Is Brought Under 11 U.S.C. § 105 of the Bankruptcy Code**

This is a **civil contempt** proceeding for sanctions for the defendant's abuse of the bankruptcy process under § 105 of the Bankruptcy Code.  Because this is an action premised only on this Court's power to "sanction parties for improper conduct" that seeks only the **non-criminal** contempt sanction remedies (e.g., disgorgement) available to litigants "wronged" by the improper conduct, this matter is an action lying exclusively within this Court's equitable jurisdiction.  And, as demonstrated in the authorities cited, there is no right to a jury trial in civil contempt proceedings.

As Judge Mahoney recognized in her May 25, 2004 Order Denying Motion To Dismiss, the Complaint is founded on the Court's authority to remedy abusive practices under § 105(a) of the Bankruptcy Code, which states that:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The factual gravamen of the Complaint is that the defendant, in the course of its presentation to the Bankruptcy Court in a core bankruptcy proceeding, abused the bankruptcy process by submitting a bogus affidavit on which the plaintiffs, plaintiffs' bankruptcy counsel, and the Bankruptcy Court relied in good faith in the disposition of the core proceeding (i.e., the relief from stay proceedings).

11

The plaintiffs are **not** asserting or relying on the concept that there is a purely private cause of action created by § 105. The plaintiffs' assertion has been and remains that § 105 furnishes a mechanism for the award of compensatory (e.g., disgorgement) and injunctive sanction relief to the plaintiffs and the members of the class who have been or will be "wronged" by the defendant's abuse of the bankruptcy system. Further, the plaintiffs are **not** asserting state law tort causes of action as stand alone bases for an award of damages. (Complaint). Rather, plaintiffs seek sanction relief under 11 U.S.C. § 105 for conduct that, to use Judge Mahoney's term, "translates" into conduct that constitutes an abuse of the bankruptcy system. As characterized by Judge Mahoney in her May 25 Order Denying Defendant's Motion To Dismiss in *Thigpen v. Matrix Financial Services*, Adv. No. 04-01035, which Order she incorporated in her ruling denying Wells Fargo's motion to dismiss:

> Ms. Thigpen is pursuing relief based upon the theory that the conduct of Matrix in execution of the affidavits is sanctionable as an abuse of the bankruptcy system under 11 U.S.C. § 105 . . . ."

> \* \* \*

> If the debtor can prove that Matrix knowingly filed an affidavit whose execution violated a state statute, sanctions might be warranted. If the debtor can prove that Matrix filed an affidavit that violated a known standard of care, sanctions might be warranted. If the actions are sufficient to result in punishment of attorneys who violate the standards and to result in judgments against notaries and their employees, then the activity, if proven, may be sanctionable if it is a systematic, routine practice in the bankruptcy court.

12

* * *

> [I]nappropriate behavior including litigation abuse and fraud can be
> dealt with by a bankruptcy court pursuant to § 105 of the Code as an
> 'abuse of the bankruptcy process.' Another Bankruptcy Code section
> does not need to be explicitly involved.

Id. at 6-7, 9, 10.

The plaintiffs are asserting their "right to seek sanctions under § 105 for an abuse of process, not based upon a private right of action for fraud or abuse of process or improper notarization." (May 25 Order Denying Stay in *Thigpen* at 3, note 1.) The plaintiffs do not intend to seek any relief beyond that afforded by § 105 of the Bankruptcy Code or the inherent powers of the court. The relief sought is in the nature of civil contempt sanctions within the contemplation of the special statutory contempt power conferred on the Court under § 105(a):

> Section 105(a) states "[t]he court may issue *any* order, process or
> judgment that is necessary or appropriate to carry out the provisions
> of this title." 11 U.S.C. § 105(a) (emphasis added [by Court]).
> Sovereign immunity aside, § 105 uses the broad term "any" which
> encompasses all forms of orders including those that award monetary
> relief. The term "any" should be given this broad construction under
> the "settled ruled that a statute must, if possible, be construed in such
> fashion that every word has some operative effect." United States v.
> Nordic Village, 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d
> 181 (1992). The broad term "any" is only limited to those orders that

13

are "necessary or appropriate" to carry out the Bankruptcy Code.

Therefore, the plain meaning of § 105(a) encompasses any type of

order, whether injunctive, compensative or punitive, as long as it is

"necessary or appropriate to carry out the provisions of" the

Bankruptcy Code.

*Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996) (emphasis added).

### C.     The Law Under § 105 And Contempt; Plaintiffs Do <u>Not</u> Seek Criminal Contempt Sanctions

The predominant view outside the Eleventh Circuit is that the power of the bankruptcy court

under section 105 is in the form of a civil contempt power, not a criminal contempt power.

Criminal contempt is not "necessary or appropriate to enforce or

implement" the court's rules or orders, but is instead intended to

vindicate the authority of the court. Gompers, 31 S.Ct. at 498. Civil

contempt compensates the party in whose favor the breached order

was issued, or coerces compliance with the court's orders; thus it

might arguably be characterized as helping to "enforce or implement"

the court's orders.

*Matter of Hipp, Inc.*, 895 F.2d 1503, 1515-16 (C.A.5 (Tex.) 1990).  *Accord, e.g., Cox v. Zale*

*Delaware, Inc.*, 239 F.3d 910, 916-17 (C.A. 7 2001):

Granted, it is unsettled whether bankruptcy judges have

criminal-contempt powers.  Compare In re Ragar, 3 F.3d 1174 (8th

Cir.1993), with In re Hipp, 895 F.2d 1503, 1515-16 (5th Cir.1990).

14

Their power to determine civil contempt is explicitly conferred by Fed.R.Bankr. 9020(b); see also 11 U.S.C. § 105; In re Power Recovery Systems, Inc., supra, 950 F.2d at 802; In re Rainbow Magazine, Inc., 77 F.3d 278, 284-85 (9th Cir.1996); In re Skinner, 917 F.2d 444, 447-48 (10th Cir.1990) (per curiam), but there is no corresponding grant of power to determine criminal contempt.

*In re Dyer*, 322 F.3d 1178, 1193 (9th Cir. 2003):

Reaching the issue as one of first impression, we conclude that criminal contempt sanctions are not available under § 105(a). Section 105(a) contains no explicit grant of authority to award punitive damages. Rather, the language of § 105(a) authorizes only those remedies "necessary" to enforce the bankruptcy code. Walls, 276 F.3d at 507. The sanctions associated with civil contempt -- that is, compensatory damages, attorney fees, and the offending creditor's compliance -- adequately meet that goal, id. at 507, rendering serious punitive sanctions unnecessary. See also Sosne v. Reinert & Duree (In re Just Brakes Corp. Sys.), 108 F.3d 881, 885 (8th Cir.1997) (holding that "the power to punish" through punitive sanctions extends beyond the remedial goals of § 105(a)); Griffith v. Oles (In re Hipp ), 895 F.2d 1503, 1515-16 (5th Cir.1990) (same).

Although "relatively mild" non-compensatory fines may be necessary under some circumstances, Zambrano v. Tustin, 885 F.2d

15

1473, 1479 (9th Cir.1989); Hanshaw, 244 F.3d. at 1140 n. 10, the language of § 105(a) simply does not allow for the serious punitive penalties here assessed (a minimum of $50,000 and, under the trustee's theory, over $200,000). As we did in Hanshaw, we leave for another day the development of a precise definition of the term "serious" punitive (criminal) sanctions. Id. (citing cases and implying that any fine above $5,000, "at least in 1998 dollars," would be serious, but declining to reach the question).

Other courts have taken the position that § 105 does contemplate the power to impose criminal contempt sanctions: "True, such enforcement vindicates the authority of the court, but the authority of courts exists not for its own sake, but for the sake of the duties that Congress has entrusted to them." *In re Ragar*, 3 F.3d 1174, 1179 (8th Cir. 1993).

A third group of courts, including the Eleventh Circuit, have affirmed the ability of courts to impose "punitive" sanctions under § 105 without discussing whether the "punitive" character refers to what would otherwise be considered criminal contempt sanctions, or to the "relatively mild" noncompensatory penalties sanctioned by the Ninth Circuit, or to punitive damages as a civil contempt component specially authorized by § 105:

Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings, for which Congress unequivocally waives sovereign immunity. Jove, 92 F.3d at 1553. The language of § 105 encompasses 'any type of order, whether injunctive, compensatory or punitive, as long as it is

16

'necessary or appropriate to carry out the provisions of' the
Bankruptcy Code.' Id. at 1553-54. **Therefore, '§ 105(a) grants
courts independent statutory powers to award monetary and
other forms of relief for automatic stay violations to the extent
such awards are "necessary and appropriate" to carry out the
provisions of the Bankruptcy Code.'** Id.

*In re Hardy*, 97 F.3d 1384, 1389-90 (11th Cir. 1996) (emphasis added). *Accord, e. g., Bessette v.
Avco Financial Services, Inc.*, 230 F.2d 439 (1st Cir. 2000), cert. denied, 532 U.S. 1048 (2001):

> Against this background it is clear, as the appellee conceded at oral
> argument, that a bankruptcy court is authorized to invoke § 105 to
> enforce the discharge injunction imposed by § 524 and order damages
> for the appellant in this case if the merits so require. **Consistent with
> this determination, bankruptcy courts across the country have
> appropriately used their statutory contempt power to order
> monetary relief, in the form of actual damages, attorney fees, and
> punitive damages, when creditors have engaged in conduct that
> violates § 524.**

230 F.3d at 445 (emphasis added).

In addition, the involvement of sanctions characterizable as criminal contempt sanctions

raises a host of due process and procedural issues:

> District courts enjoy "wide discretion to fashion an equitable remedy
> for [civil] contempt that is appropriate to the circumstances."

Guardian Pools, 828 F.2d at 1515. These sanctions may serve one of two broad purposes: (1) coercing the contemnor to comply with a court order, or (2) compensating a party for losses suffered as a result of the contemptuous act. See Jove Engineering Inc. v. IRS, 92 F.3d 1539, 1557 (11th Cir.1996) (citing Guardian Pools, 828 F.2d at 1515). In serving these ends, a court's civil contempt power is measured solely by the "'requirements of full remedial relief.'" Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1304 (11th Cir.1991) (quoting Guardian Pools, 828 F.2d at 1515) (citation omitted). However, a district court may not use the civil contempt power to impose what amounts to a punitive or criminal contempt sanction. See In re E.I. DuPont De Nemours & Company-Benlate Litigation, 99 F.3d 363, 368 (11th Cir.1996) (noting that it "'requires no citation of authority to say that a district court may not, even unwittingly, employ a civil contempt proceeding to impose what, in law, amounts to a criminal contempt sanction'") (quoting Blalock v. United States, 844 F.2d 1546, 1560 n. 20 (11th Cir.1988) (per curiam) (Tjoflat, J., specially concurring)). A punitive or criminal contempt sanction may only be fashioned after many of the due process safeguards afforded to defendants in criminal proceedings -- the right to counsel, the privilege against self-incrimination, the

18

presumption of innocence, and the right to a jury trial in serious cases

-- are provided to an alleged contemnor.

*United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999).

In seeking compensatory and injunctive sanctions against the defendant under § 105, the plaintiffs do **not** seek the imposition of criminal contempt sanctions. The goal of the plaintiffs is to recover for themselves and the class, in the form of sanctions under § 105, appropriate remedies for the losses suffered and costs incurred as a result of the defendant's abusive conduct in their bankruptcy proceedings and to secure injunctive relief that will prevent the defendant's continuation of such conduct, all under the policing authority granted the Court by 11 U.S.C. § 105(a).

The reasons that plaintiffs seek only sanctions that are not characterizable as criminal contempt sanctions are manifold: First, the law in this Circuit may ultimately be that the bankruptcy court lacks criminal contempt powers under § 105; second, proceedings for criminal contempt sanctions for abuse of the bankruptcy system are subject to a host of due process and procedural requirements; third, the concerns and injuries of the plaintiffs and the class are fully redressable as to the plaintiffs and the class under the Court's § 105 civil contempt powers.

### D. There Is No Right To Jury Trial Where No Element Of Relief Sought Is In The Nature Of A Criminal Contempt Sanction

The Complaint does **not** seek criminal contempt sanctions. This proceeding was **not** initiated by motion for an order of criminal contempt under Bankruptcy Rule 9020 and does **not** seek the imposition of criminal contempt sanctions. The Complaint makes **no** reference whatsoever to criminal contempt. The law is well established that if there is no element of relief sought that is in the nature of a criminal contempt sanction, the defendant has no claim to a right to jury trial.

19

> Civil contempt proceedings arising out of core matters are themselves
> core matters. See Better Homes of Va., Inc., 804 F.2d at 292; Haile
> v. New York State Higher Educ. Servs. Corp., 90 B.R. 51, 54
> (W.D.N.Y.1988); Kellogg v. Chester, 71 B.R. at 38; In re Stephen W.
> Grosse, P.C., 84 B.R. at 386; In re Miller, 81 B.R. at 677; but see In
> re Sequoia Auto Brokers, Ltd., 827 F.2d at 1289; Omega Equip.
> Corp. v. John C. Louis Co. (In re Omega Equip. Corp.), 51 B.R. 569,
> 574 (D.D.C.1985). Civil contempt proceedings not involving
> punishment with imprisonment have been referred to the bankruptcy
> courts in the District of Utah in accordance with 28 U.S.C. § 157.
> Therefore, the bankruptcy court below had the power to enter
> monetary sanctions against appellant for civil contempt.

In re Skinner, 917 F.2d 444, 448 (10th Cir. 1990). Accord, e.g. In re Krypton Broadcasting of Ft. Pierce, Inc., 181 B.R. 657, 663 (Bankr. S.D. Fla. 1995) ("Civil contempt proceedings arising out of core matters are themselves core matters."); In re Spanish River Plaza Realty Co., Ltd., 155 B.R. 249, 251 (Bankr. S.D. Fla. 1993) ("Civil contempt proceedings arising out of core matters are themselves core matters.").

In Bartel v. Eastern Airlines, 133 F.3d 906 (1998 WL 2405) (2d Cir.), cert denied, 525 U.S. 867 (1998), the bankruptcy court held a shareholder in civil contempt for filing proofs of claims in the name of the debtor in other pending airline bankruptcies and awarded the trustee damages. The shareholder had filed responses contesting the authority of the bankruptcy court to hold him in contempt and seeking withdrawal of the reference, which was denied by the district court. After the

district court affirmed the bankruptcy court's contempt order, appeal was taken to the Court of Appeals for the Second Circuit. The Second Circuit affirmed that "bankruptcy courts have the power to impose civil contempt sanctions" and further affirmed that neither withdrawal of the reference nor the granting of a jury trial was appropriate:

> Furthermore, the district court did not err in refusing to withdraw the reference or to grant Bartel a jury trial on the contempt sanctions. The contempt sanctions related to a core bankruptcy issue, and thus were themselves core issues. See, e.g., In re Skinner, 917 F.2d 444 (10th Cir. 1990). Under the circumstances, it was appropriate for the district court to refuse to withdraw the reference. See In re Orion Pictures Corp., 4 F.3d 1095, 1011 (2d Cir. 1993). And no right to jury trial applied. See, e.g., In re Kitchen, 706 F.2d 1266, 1271 (2d. Cir. 1983) (no right to a jury trial for civil contempt).

1998 WL 2405 at **2.

The remedial civil contempt relief accorded a "wronged" litigant (e.g., disgorgement) is "equitable relief" even if monetary in character; unless sanctions that are criminal in nature are to be imposed, no right to jury trial exists.

**E.** **Punitive Damages Are Included In the Complaint Only As A <u>Component Of Civil Sanctions Relief Under Bankruptcy Code § 105</u>**

The traditional analysis of the distinction between criminal contempt and civil contempt focuses on an examination of the relief or sanction imposed and the rationale for its imposition:

> The Supreme Court has instructed that 'conclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from the subjective intent of [the court imposing the sanction], but from an examination of the character of the relief itself.' International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, _____, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994) (citation and internal quotation marks omitted). **If the relief is designed to compensate a complainant for losses or to coerce a party into complying with a court order, the contempt sanction is civil in nature.** See id., 512 U.S. at _____, 114 S.Ct. at 2558; Martin v. Guillot, 875 F.2d 839, 845 (11th Cir.1989). **By contrast, "if a court seeks to vindicate its authority by punishing a contemnor, then [the] contempt is criminal in nature."** Martin, 875 F.2d at 845 (citations omitted). Thus, we must determine whether the specific sanctions ordered by the district court were compensatory and coercive in nature, or instead were punitive in nature.

*In re E.I. DuPont De NeMours & Company-Benlate Litigation*, 99 F.3d 363, 368 (11th Cir. 1996) (emphasis added).

22

Insofar as the award of punitive damages to a plaintiff is concerned, however, the analysis is ostensibly different under § 105(a) as interpreted in the Eleventh Circuit. As noted above, the Eleventh Circuit law is very clear that "the plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative, or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *In re Hardy, supra., quoting In re Jove Engineering.* Judge Mahoney has previously observed in construing § 105 on two occasions that "Courts award exemplary damages if a creditor has willfully abused the bankruptcy process or court orders." (Order Awarding Judgment To Plaintiffs, Dean v. First Union Mortgage, Adv. No. 99-1144 (05/10/02) (awarding $2,000,000 in punitive damages)). This is the same conclusion reached by other bankruptcy courts exercising their authority under § 105(a). *E.g., Matter of Arnold,* 206 B.R. 560 (Bankr. N.D. Ala. 1997) (award of "two to three times actual damages" under § 105 was "necessary and appropriate"); *In re Lafferty*, 229 B.R. 707 (Bankr. N.D. Ohio 1998) (awarding punitive damages under § 105); *In re Borowski*, 216 B.R. 922 (Bankr. E.D. Mich. 1998) (finding punitive damages available under § 105 but not warranted under facts).

Punitive damages were included as part of the sanction relief demanded in the Complaint in the belief that under *Hardy* and *Jove* such can be an appropriate component of **civil sanction relief to the plaintiffs** under § 105(a). The purpose of the inclusion of punitive damages was **not** for the purpose of vindicating the authority of the Court **in the context of a criminal contempt proceeding**. This is by no means to say that this proceeding as a civil contempt proceeding does not involve "both the private parties and the court" or is not a proceeding to vindicate the authority of the Court. The purpose of § 105 is to allow the Court to deal with abuses of the bankruptcy system. Any sanction under § 105 necessarily is an action by the Court to vindicate both the bankruptcy

23

system and the Court. Section 105 plainly contemplates the vindication of "public rights" by the Court's imposition of sanctions compensating and protecting the private parties "wronged" by the abusive conduct.

Should this Court conclude that a "punitive" order under § 105 as contemplated by the Eleventh Circuit must necessarily be characterized as a "criminal" sanction, however, the plaintiffs will amend their complaint to add language that deletes punitive damages as an element of the relief sought. To incorporate here the formulation of the available relief under § 105 catalogued by Judge Mahoney, the plaintiffs are seeking for themselves and the class "compensatory and coercive damages and attorneys fees " as a "wronged litigant," together with injunctive relief. The plaintiffs are not seeking "sanctions paid to the court system," which plaintiffs believe would be inherently in the nature of a criminal contempt sanction. *See In re Dyer, supra*, at 1192 ("Whether the fine is payable to the complainant may, however, be one relevant factor in determining whether the fine is compensatory or punitive.").

## III.   <u>Conclusion</u>

For the foregoing reasons, this matter is a core proceeding for civil contempt arising out systematic and knowing abuse of the bankruptcy process which occurred during core proceedings. No right to jury trial attaches. Consequently, the defendant's motion to withdraw the reference is due to be denied and its jury demand is due to be stricken.

24

CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL
Attorneys for Plaintiffs
Post Office Box 2906
Mobile, Alabama  36652
251-433-6961


/s/ Donald J. Stewart
DONALD J. STEWART  (STEWD1116)


OLEN, NICHOLAS & COPELAND P.C.
Attorney for Plaintiffs
Post Office Box 1826
Mobile, Alabama  36633
251-438-6957


/s/ Steve Olen
STEVE OLEN  (OLENS7621)


/s/ Royce A. Ray, III
ROYCE A. RAY, III  (RAYRO9197)


## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 17th day of June, 2004, served a copy of the foregoing pleading on all counsel listed below by mailing same by United States mail, properly addressed, and first class postage prepaid.

Henry A. Callaway, III
Hand, Arendall, L.L.C.
Post Office Box 123
Mobile, Alabama  3660


/s/ Steve Olen
STEVE OLEN

25