IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re:

MARK JOSEPH BRANNAN,                         Case No. 02-16647
KELLY ANN BRANNAN,

    Debtors.

MARK JOSEPH BRANNAN,
KELLY ANN BRANNAN,

    Plaintiffs,

vs.                                                Adv. Proc. No. 04-01037

WELLS FARGO HOME MORTGAGE, INC.
f/k/a NORWEST MORTGAGE, INC.,

    Defendant.

**ORDER DENYING PLAINTIFF'S MOTION TO CERTIFY THE PROPOSED CLASS
BUT ALLOWING LEAVE TO AMEND**

Steve Olen, Attorney for Plaintiffs, Mobile, AL
Benjamin T. Rowe, Attorney for Plaintiffs, Mobile, AL
Ian David Rosenthal, Attorney for Plaintiffs, Mobile, AL
Henry A. Callaway, III, Attorney for Defendant, Mobile, AL
Jennifer S. Morgan, Attorney for Defendant, Mobile, AL

      This case involves the affidavit preparation, signing and filing practices of Wells Fargo, its employees, and the law firms representing it over a period from 1996 through 2008 in the Southern District of Alabama Bankruptcy Court. The debtor asserts that the practices were so pervasively improper and/or fraudulent as to require relief for all debtors in this district even if the information contained in each debtor's particular affidavit was true. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of

1

Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has authority to enter a final order. The case is presently before the court at the class certification stage. For the reasons indicated below, the Court is denying the plaintiff's motion to certify the class proposed by her, but will allow 30 days for plaintiff to amend the proposed class, if appropriate.

## FACTS

### A.

Wells Fargo was the mortgage and note holder for an unknown but substantial number of homes of people who filed bankruptcy in the Southern District of Alabama from 1996 through 2008. In order to be able to foreclose on the home of any debtor who was delinquent in his or her payments, Wells Fargo needed relief from the automatic stay that was imposed in every bankruptcy case at filing. This relief was necessary until the debtor obtained a discharge or had his or her case dismissed. Kelly Brannan, with her then husband, filed a Chapter 13 bankruptcy case in the Southern District of Alabama on November 21, 2002. Kelly and Mark Brannan owned a home at 1309 Mixon Avenue in Bay Minette, Alabama. They became delinquent in their payments to Norwest Mortgage, Inc., n/k/a Wells Fargo Home Mortgage, Inc., their mortgagee. In order to foreclose on the house, Wells Fargo sought relief from the automatic stay by motion filed pursuant to 11 U.S.C. § 362. The motion was filed on March 31, 2003. In conjunction with the motion, Wells Fargo filed an affidavit supporting the motion.

The affidavit was filed on March 31, 2003. The affiant was Teresa Diaz-Cochran and the notary public was Marian W. Hudson. The affidavit and notary public acknowledgment were dated March 28, 2003. The affiant signature and notary signature were on a page separate from the other two pages of the affidavit. The affiant attested to the financial data surrounding the

2

loan such as the amount owed and the amount in arrears, and stated facts about the mortgage and note. The affidavit also stated that copies of the note and mortgage were attached to the affidavit. The affidavit had only one attachment—the mortgage. From testimony offered at the certification hearing, it is clear that the Brice Vander Linden firm prepared and filed the Motion for Relief from the Stay and it prepared the affidavit that Theresa Diaz-Cochran signed. The testimony also shows that the affidavit was "presigned." The Wells Fargo employees had sent to Brice Vander Linden multiple signature pages with the affiant's signature and the notary's signature on the page as well as the notary seal, with the dates of signing blank. The employee reviewed the affidavit online when it was sent to the employee's email. If the financial data was correct, the employee emailed approval to the Brice firm and it attached a presigned signature page to the approved wording. The Brice firm also apparently filled in the dates of the affiant's and notary's signatures.

The Brannans and Wells Fargo agreed to a conditional denial of the motion for relief from the stay at a hearing held on April 23, 2003. The court signed an order on April 25, 2003 stating, in general terms, that the arrears of the Brannans on their mortgage would be paid through their Chapter 13 plan together with attorney's fees of $350 and a filing fee of $75. Ms. Brannan never personally paid the mortgage payments after that date. She deeded the home to Wells Fargo in a deed-in-lieu of foreclosure arrangement.

Debtor offered into evidence 631 affidavits with a variety of alleged flaws. Wells Fargo listed the defects in its brief.

1. A person other than the affiant mistakenly named in the body of the affidavit
2. Misdescription of the affiant's job (i.e., called "bankruptcy representative or "bankruptcy specialist" as opposed to "bankruptcy supervisor")
3. Notarization undated

3

4. Missing page
5. Affidavit refers to an exhibit containing an indication that it was printed or faxed later
6. Affidavit refers to an exhibit attached to a motion for relief from stay which had not been filed at the time of the affidavit's execution
7. First page of the affidavit appears to have been "updated" after the affidavit's signature to reflect a missed payment subsequent to the date of the affidavit (without the knowledge or consent of any Wells Fargo employee)
8. Handwriting of the date on the notarization appears to be different from that of the notary
9. Affidavit exhibit(s) missing
10. Affidavit refers to a note as an exhibit but instead there is a Lost Note Affidavit
11. Different font for some part of the affidavit
12. Affiant date blank
13. Notarization state or county incorrect
14. McCalla Raymer attorney signed as Assistant Secretary of Wells Fargo
15. Blanks in affidavit not filled in
16. Affiant's name misspelled
17. Affiant and notary dates are different
18. Affiant's name wrong in body of affidavit
19. Affiant was allegedly not assistant secretary of MERS
20. Handwritten changes on affidavit
21. Affidavit refers to delinquent payment for month after affidavit filed
22. Missing affiant signature
23. Debtor's name wrong in some places in affidavit
24. Affiant did not sign in presence of notary
25. Affidavit refers to property value in debtor's bankruptcy schedules, but affiant does not know whether she/he personally reviewed the schedules[1]

**B.**

The evidence shows that two law firms handled all or substantially all of the bankruptcy cases in this district from 1996 - 2008 for Wells Fargo – the Brice Vander Linden firm and the McCalla Raymer firm. The Brice Vander Linden firm has admitted it filed "presigned" affidavits and has provided a list of many of them. Those affidavits are included in plaintiff's list of 631 affidavits. The affidavits it handled also included affidavits that exhibited most if not all of the other infirmities listed. The McCalla Raymer firm does not admit to filing any presigned affidavits. However, all of the other infirmities appeared in its affidavits.

---

[1] Defendant's Brief in Opposition to Plaintiffs' Motion for Class Certification, Docket Entry #200, pages 4-5.

**1.**

The Brice Vander Linden firm commenced its representation of Wells Fargo no later than 1996. From 1996-2003, it used (at least part of the time) presigned affidavits from Wells Fargo representatives which it filed in conjunction with relief from stay motions. These presigned affidavits were provided by Wells Fargo and were sanctioned by Wells Fargo's own Guidelines dated May 27, 2003[2] which authorized the procedure. It is not clear how long the presigned affidavit process was used except that Hillary Bonial, the lawyer from Brice in charge of bankruptcy operations, knows it ended on April 15, 2003 when the Brice Vander Linden firm sent an email to Wells Fargo stating that the firm was terminating the procedure. The Brice firm itself terminated the process, at least in part, because a bankruptcy judge in California called the process into question. Another Brice client, Mitsubishi, had been providing presigned signature pages to Brice and an affidavit with a presigned signature page was discovered to have been filed in Judge Klein's court. Wells Fargo never told Brice Vander Linden to stop using the procedure. After terminating the policy, the Brice firm provided full affidavits to Wells Fargo by email, using what it called the "corrected execution" procedure. Wells Fargo employees were responsible for reviewing, signing and notarizing the affidavits and returning them by overnight mail to the Brice firm. The Brice firm did not attach any documents that an affidavit stated were attached unless it determined it was not a document available on Wells Fargo's computer system. If a document came from a third party, some evidence indicated that the Brice firm forwarded it to Wells Fargo.

---

[2] "If our (Wells Fargo's) signature is necessary, please send us a supply of the last page of the document and we will pre-sign them (sic) for future use by your firm." Home Mortgage Default Management Guidelines, May 27, 2003, page 23.

The evidence is repetitiously substantial that the Brice firm filed the affidavits returned to them by Wells Fargo regardless of condition. Many affidavits bore no date for an affiant's signature and/or a notary's signature; many had mistakes as to the names of affiants or job titles; many had statements that documents were attached that were not.

**2.**

The McCalla Raymer law firm did a substantial amount of Wells Fargo's work in the Southern District of Alabama over the period 2004-2008. There is no evidence that McCalla Raymer used presigned affidavits. However, the McCalla Raymer affidavits had many of the same defects as the Brice firm affidavits. Many had undated affiant or notary signatures. Many had wrong affiant names or job titles.

In addition, McCalla Raymer affidavits had three other defects. Some McCalla affidavits had attachments added to affidavits after they were signed. This is clear because some affidavits stated that a note was attached, but a lost note affidavit was attached instead. Most troubling was the fact that there were numerous affidavits which stated that payments were in default for periods of time in the future, i.e., an affidavit dated August 25, 2004 stated that the September 2004 payment was in default.

**3.**

Wells Fargo had guidelines for attorneys working on its bankruptcy cases. In the 2003 version of the guidelines, attorneys were advised that Wells Fargo would supply presigned affidavit signature pages for bankruptcy cases if requested. It is unclear if that was in the guidelines before that date. After the 2003 version, the presigned affidavit signature language was deleted. The guidelines said nothing else about procedures to be followed in regard to

affidavit preparation by law firms. Wells Fargo employees repeatedly stated that they relied on their attorneys to tell them what to do. Wells Fargo had no organized training for affidavit signing employees or notary signing employees. When hired, they were told how to do their jobs by their predecessors or supervisors.

Employees signed numerous affidavits every day. One employee described receiving and handling 80-100 affidavits before lunch each day. She averaged about 2 ½ - 3 minutes per affidavit for collating, stapling, checking content and signing. One employee admitted she didn't read any of the affidavits she signed. Others testified they read the financial information. When confronted with affidavits with wrong names, wrong job titles, missing or incorrect attachments, they expressed surprise. If the affidavit stated that the debtors' bankruptcy schedules indicated a property value of a certain amount, the employees testified that they did not verify that fact because they had no access to PACER.

Many affidavits had mortgage and note attachments which appeared to be attached after the preparation and signing of the affidavit. Many affidavits had Lost Note affidavits attached that said a copy of the mortgage and note were attached. Other affidavits stated that the Mortgage and Note were attached to the motion for relief from stay but were not.

The employees signing affidavits testified in numerous instances that the date of their signing of the affidavit was not filled in by them. Notary employees also often testified that they did not fill in the dates on their notarizations. Someone else had done it. Employees signing affidavits did not always sign the affidavits in front of a notary. The affidavits were placed in a file folder and delivered to the notary by the affiant or another employee.

7

Case 04-01037    Doc 219    Filed 11/07/11    Entered 11/07/11 11:24:00    Desc Main
Document      Page 7 of 13

Some notarizations were not dated the same date as the affiant's signature date. Some affidavits stated that a debtor was in default as to payments which were not yet due. The Wells Fargo employees stated that they did whatever their attorneys told them to do.

**4.**

Wells Fargo employees, high and low, and its attorneys testified that they saw nothing wrong with their affidavit preparation, signature and notarization procedures. If the financial data in the affidavit was correct, they testified that the affidavit was okay. Their focus was solely on the financial data. The rest was "technicalities."

**LAW**

The issue to be decided is whether a class of debtors can be certified pursuant to Fed. R. Bankr. P. 7023. Rule 7023 incorporates Fed.R.Civ.P. 23 into adversary proceedings. The requirements for a class are set forth in the rule.

> (a) **Prerequisites**. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) The class is so numerous that joinder of all members is impracticable;
> (2) There are questions of law or fact common to the class
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) The representative parties will fairly and adequately protect the interests of the class.

Brannan seeks to certify a class that includes every debtor that had a case in the Southern District of Alabama from 1996 through 2008 in whose case an affidavit was filed by Wells Fargo. Brannan asserts that, based upon the facts outlined above, every affidavit is improper or fraudulent due to the policies and procedures followed by Wells Fargo and its agents and employees in preparing, executing and filing affidavits in debtors' cases. The Court concludes that a class defined as proposed cannot be certified. However, the Court concludes that

8

Brannan's case can serve as a vehicle for sanctioning Wells Fargo for its behavior, and/or, perhaps the class can be redefined to include those who have suffered actual harm.

There are three reasons the Court concludes that the proposed class cannot be certified. First, abuse of the bankruptcy process or fraud on the court is a remedy that is based upon injury to the court system as a whole rather than an injury to individual debtors. Therefore, to the extent this case is about punishment of Wells Fargo for <u>all</u> debtors, regardless of actual injury, the relief given must necessarily be to the system—not individuals. Second, no other court that has dealt with similar practices has done more than sanction creditors who use improper practices. Although not determinative of the right to a class wide remedy, it is evidence that such abuses, involving numerous debtors, have been dealt with by courts in a more summary fashion. Third, although the proposed class of debtors was "harmed" in a way by the practices of Wells Fargo, the harm cannot be quantified meaningfully for each debtor. A class that specifically focused on debtors who actually paid an attorneys' fee or filing fee for Wells Fargo's shoddy filings might be able to be certified because such debtors suffered actual monetary damages. What the debtors received was actually worth less than the $350-$500 charged and paid by them.

**A.**

Abuse of the bankruptcy process and/or rules and fraud on the court are complaints which go to the heart of the bankruptcy system—not to any particular debtor. In fact, as Wells Fargo has pointed out, Ms. Brannan can point to no actual monetary harm suffered by her. What is the harm in Wells Fargo's practices? That Wells Fargo "took the law into its own hands." It decided unilaterally to disregard South Carolina notary public requirements, this Court's local

9

Case 04-01037    Doc 219    Filed 11/07/11    Entered 11/07/11 11:24:00    Desc Main
Document      Page 9 of 13

practices, and the ages old law of signature or declaration under oath or penalty of perjury. Testimony under oath may not be foolproof, but it is the lifeblood of the courts. If parties have no regard for what it means, those parties' testimony is suspect and unreliable. The only reason this Court allows evidence to be presented by Wells Fargo and other parties by affidavit is to make the process more convenient and streamlined for the Court and litigants. If the testimony is not trustworthy because the safeguards of the process are not observed, this Court (and one would suspect others too) will have to require parties to appear in person. Disregard of court procedures and rules, notary law and signatures under oath is a courtwide concern.

In *Travelers Indemnity Company v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985) the Eleventh Circuit defined fraud on the court as "that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication." It is an abuse that must be corrected regardless of harm to any individual debtor or creditor. To the extent Brannan seeks to correct or address this courtwide concern, the remedy is not one for damages to be awarded to specific debtors.

Several cases similar to this case are pending in the Middle District of Alabama Bankruptcy Court. Judge Sawyer concluded that a single false affidavit might not be a fraud on the court but an intra-party fraud. However, five factors made the facts alleged in Judge Sawyer's cases and this Court's cases fraud on the court. *Woodruff v. Chase Home Finance, LLC,* 2010 WL 386209 (Bankr. M.D.Ala. 2010).

>(1) Large numbers of motions for relief from the automatic stay are filed.
>(2) There is only a short period of time to dispose of these motions.
>(3) There is a huge economic disparity between the resources available to the parties.
>(4) The subject matter is critical to the debtor's survival.

10

Case 04-01037    Doc 219    Filed 11/07/11    Entered 11/07/11 11:24:00    Desc Main
Document    Page 10 of 13

(5) These matters are only rarely litigated to a final order after a hearing on evidence. *Woodruff*, 2010 WL 386209, at *6.

These factors make the actions of Wells Fargo, if proven, a fraud on the court. The sheer numbers, the reliance of the court on the affidavits, and the subject matter of the Wells Fargo motions (debtors' homeplaces) make even careless, negligent procedures inexcusable.

The facts also can be seen as a ground for this Court to exercise its inherent authority to impose sanctions "to enforce court . . . rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). *Franken v. Mukamal*, 2011 WL 4584767 (11th Cir. 2011) (citing to *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008) and *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006)); *Hardy v. U.S.*, 97 F.3d 1384 (11th Cir. 1996); *In re Mroz*, 65 F.3d 1567 (11th Cir. 1995). "The power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123 (1991) (citing *Ex parte Robinson*, 19 Wall. 505, 510, 22 L.Ed. 205 (1874)). The *Chambers* court indicated that one type of contempt the courts may sanction under their inherent powers is "tampering with the administration of justice . . . [which] involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed.1250 (1944)). This is precisely the type of wrong allegedly committed in this case as it pertains to all debtors in this district.

**B.**

The Court has found no cases that have certified a class like this one. That alone is not sufficient reason not to certify a class, but it is some support for this ruling. This is particularly true when there is another remedy, a sanction, which is clearly within this Court's authority.

## C.

To have standing to sue, a plaintiff must have "suffered 'injury in fact,'. . .the injury[]. . . [must be] 'fairly traceable' to the actions of the defendant, and. . . the injury[]. . . [must] likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An "injury in fact" must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61, 112 S.Ct. 2130; *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) (stating that "[u]nder elementary principles of standing, a plaintiff must allege and show that he personally suffered injury"). Although plaintiff characterizes the harm to plaintiff as the order of this Court requiring payment of attorney's fees and expenses and the posting of the same to plaintiff's account, Brannan can offer no proof that any information in her tainted affidavit was untrue, nor can she prove she paid Wells Fargo anything for production of the shoddy document. This will be true of many of the proposed class members. Only debtors who actually paid fees for the offending affidavits had an "injury in fact." The injury was overpayment for improper document preparation. The cause of action of abuse of the rules and process under 11 U.S.C. § 105 is a sufficient basis for this claim coupled with 11 U.S.C. § 506 allowing a creditor to recover only "reasonable costs or charges" from a debtor. If plaintiff can redefine the class to encompass only those debtors who actually paid a fee to Wells Fargo, the class may be able to be certified.

IT IS ORDERED that:

1. The motion of the plaintiff to certify her proposed class is DENIED;

2. The plaintiff shall have 30 days from the date of this order to amend the proposed class, if she desires to do so;

12

3. A hearing on any amended class proposal shall be held on January 10, 2012, at 1:00 p.m. in Courtroom 2, U.S. Bankruptcy Court, 201 St. Louis Street, Mobile, AL 36602;

4. The plaintiff may file a brief in support of any amended class by December 12, 2012 and the defendant may file any responsive brief by December 23, 2012; and

5. At the hearing on January 10, 2012, the Court will discuss with counsel how to proceed with any sanction hearing in regard to Wells Fargo's actions as the Court indicated might be appropriate in this ruling.

Dated: November 7, 2011

_____
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE