IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re:

MARK JOSEPH BRANNAN,                          Case No. 02-16647
KELLY ANN BRANNAN,

    Debtors.

MARK JOSEPH BRANNAN,
KELLY ANN BRANNAN,

    Plaintiffs,

vs.                                            Adv. Proc. No. 04-01037

WELLS FARGO HOME MORTGAGE, INC.
f/k/a NORWEST MORTGAGE, INC.,

    Defendant.

**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

    Steve Olen and Steven L. Nicholas, Attorney for Plaintiffs, Mobile, AL
    Benjamin T. Rowe, Attorney for Plaintiffs, Mobile, AL
    Ian David Rosenthal, Attorney for Plaintiffs, Mobile, AL
    Henry A. Callaway, III, Attorney for Defendant, Mobile, AL
    Jennifer S. Morgan, Attorney for Defendant, Mobile, AL

This case involves the affidavit preparation, signing and filing practices of Wells Fargo

Home Mortgage, Inc. through its employees and law firms representing it over the period from

1996 through 2008 in the Southern District of Alabama Bankruptcy Court.  The plaintiffs assert

that the practices of the defendant and its representatives were so pervasively improper or

fraudulent as to require relief for all debtors who had affidavits filed in their cases in this district

even if the information contained in any debtor's particular affidavit was true.  The Court has

jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of

Reference of the District Court.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)

1

and the Court has the authority to enter a final order.  For the reasons indicated below, the Court is granting the plaintiffs' class certification motion.

## FACTS

### A.

The Court incorporates the findings of fact in its order dated November 7, 2011.  There is no need to restate those findings.

Since that time, two additional plaintiffs, Minnie and Johnny Lee Ward, have been added to the case.  They filed bankruptcy on April 13, 2004.  Two affidavits were filed by Wells Fargo and Judge Shulman entered two orders conditionally denying relief from the stay after submission of the affidavits.

The first affidavit, filed on July 11, 2004, was filed without a motion for relief from stay being filed.[1]  The affidavit stated that the note and mortgage were attached to the motion.  The affidavit has attached to it a Lost Note Affidavit stating that the note cannot be found.    T h e affidavit also states that the Wards had not paid installment payments for May through July 2004.  However, the affidavit was dated June 29, 2004, before the July payment was due.  The signature page of the affidavit has nothing on it but the affiant's signature and the notarization. The first two pages of the affidavit show no fax transmittal information on the bottom of each page, but the signature page has fax transmittal data.

On February 7, 2008, Wells Fargo filed another affidavit.  The affiant stated she was an "Assistant Secretary" for Wells Fargo which she testified in her deposition was incorrect.  The affidavit stated that the note and mortgage were attached to the motion for relief from stay and

---

[1]  The docket entry shows that Wells Fargo meant to file a motion for relief from the stay together with the affidavit.  The ECF document is titled "Motion for Relief from Stay."  The fact that the actual motion was not filed appears to be an error.

they were not attached. The same Lost Note affidavit was attached to the affidavit as was attached to the 2004 affidavit.

For the relief from stay order entered in 2004, Wells Fargo charged attorneys fees and costs of $750. For the motion and affidavit filed in 2008, Wells Fargo's attorneys charged $750 in fees and costs.

The plaintiffs also offered into evidence the Inspector General's Consent Judgment dated April 4, 2012, and the Executive Summary of Multistate/Federal Settlement of Foreclosure Misconduct Claims that settled claims between the state attorneys general, federal authorities, and five banks, including Wells Fargo. The claims were for mortgage foreclosure irregularities, including allegations by the plaintiffs of "robo-signing" by the banks of "thousands of foreclosure affidavits without reviewing the validity or accuracy of the sworn statements." The settlement related only to mortgage foreclosure practices and affidavits. Wells Fargo and the other banks did not admit that the allegations were true but did allow the judgment to be entered and agreed to pay $25 billion dollars in monetary sanctions. According to the Executive Summary, "the settlement represents the largest financial recovery obtained by the attorneys general except for the 1998 Master Tobacco Settlement."

The plaintiffs also offered a Memorandum of Review from the Inspector General of the U.S. Department of Housing and Urban Development dated March 12, 2012. It is a review of the Wells Fargo Bank Foreclosure and Claims Process in Fort Mill, SC. The review speaks for itself. However, the findings included the following:

> The affiants routinely signed and certified that they had personal knowledge of the contents of documents, including affidavits, without the benefit of supporting documentation and without reviewing the source documents referred to in the affidavits and verifying the accuracy of the foreclosure information stated in the

affidavits. A number of affidavit signers admitted having signed up to 600 documents per day.

Employees who notarized documents, including affidavits, routinely did not witness the signature of the documents and notarized up to 1,000 documents per day.

Overall, the interviews indicated that the affidavit signers signed the great majority of the judgment affidavits without personal knowledge of or otherwise verifying the data and information contained in the affidavits they signed. Affidavit signers signed hundreds of foreclosure affidavits per day, and most only verified that their name was properly typed on the document as the signer of the affidavit. Many said that they did not read the affidavits. Many told us that a notary was not present when they signed the affidavits.

Affidavit signers and midlevel managers responsible for the affidavits told us that Wells Fargo management was aware that they did not read or verify the information in the affidavits that they signed. Several persons we interviewed said that they had expressed concerns about signing the affidavits (such as swearing that they had personal knowledge of the loan and had verified the document's content when they had not). Affidavit signers informed upper management that they could not handle the workload. Wells Fargo management did not correct the problem and, instead, in a March 2008 email, reduced the timeframes for processing the affidavits from 5 to 7 days to 24 to 48 hours, and the affidavit signers were required to sign the affidavits they received each day at 9 a.m. by 12 p.m. that same day, often signing in excess of 100 affidavits during that time.

The Inspector General concluded that "Wells Fargo did not establish an effective control environment to ensure the integrity of its foreclosure process." The IG found that Wells Fargo engaged in improper practices that did not comply with federal regulations.

B.

The plaintiffs ask that two classes be certified. The classes are:

1. All individuals who:

    (i)    Have filed a Chapter 13 or Chapter 7 bankruptcy case in the Southern District of Alabama in which the defendant filed, or caused to be filed, an affidavit in

support of a motion for relief from stay, motion for adequate protection, or similar motion filed from January 1, 1996 through December 31, 2008; and

(ii)    Made any payment to Defendant (directly or indirectly) for attorneys fees and/or filing fees associated with such motions.

1. All individuals who

(i)    Have filed a Chapter 13 or Chapter 7 bankruptcy case in the Southern District of Alabama in which the defendant filed, or caused to be filed, an affidavit in support of a motion for relief from stay, motion for adequate protection, or similar motion filed from January 1, 1996 through December 31, 2008; and

(ii)    Have any charges posted to their mortgage account for attorneys fees and/or filing fees associated with such motions.

## LAW

The issue to be decided is whether one or both of the classes can be certified pursuant to Fed. R. Bankr. P. 7023 for purposes of prosecuting a fraud on the court claim under the inherent powers of the court or an abuse of process by fraud claim pursuant to 11 U.S.C. § 105. Rule 7023 incorporates Fed. R. Civ. P. 23 into adversary proceedings in bankruptcy cases. The plaintiffs bear the burden of proof by a preponderance of the evidence. *In re HealthSouth Corp. Securities Litigation*, 257 F.R.D. 260, 270 (N.D. Ala. 2009); *All Family Clinic of Daytona Beach Inc. v. State Farm Mut. Auto. Ins., Co.*, 280 F.R.D. 688, 690 (S.D. Fla. 2012). At a class certification hearing, the plaintiffs must "establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). The requirements for a class certification that must be proved are set forth in the rule.

(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

5

> (4) The representative parties will fairly and adequately protect the
> interests of the class.

These prerequisites are usually designated as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *AmChem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). The court will discuss each requirement in turn.

However, several other issues raised by Wells Fargo must be addressed prior to discussing the class action requirements. These issues relate to the propriety of the causes of action in general. Is there a private cause of action for abuse of process or fraud on the court and do Wells Fargo's actions constitute such an abuse, if the facts as pleaded are true? Are Wells Fargo's due process rights being protected? Is an adversary proceeding the proper procedural posture for these claims?

### 1. Preliminary Issues

### A.

### Abuse of Process and Fraud on the Court

Why are Wells Fargo's actions a fraud on the court or an abuse of process? Because, if the facts as alleged are true, Wells Fargo failed to establish a procedure of production of affidavits that guaranteed that the facts presented to a bankruptcy court were true and accurate. The facts alleged are that affidavits were not reviewed carefully by affiants and notarization was done in a manner that flaunted state law regarding notaries public. What the court relied on—the affiant's word and the notary's attestation—are untrue on a consistent basis. One or both parts of the affidavit process—affiant swearing of his/her personal knowledge to the truth of the facts in an affidavit and affiant doing such swearing in the presence of a notary public who signed according to state law—did not occur.

6

Wells Fargo disputes that abuse of the bankruptcy process and/or fraud on the court claims give rise to a private cause of action. The Court concludes that either the court has the power to impose sanctions on Wells Fargo under its inherent power or it has the statutory ability to correct abuse or fraud on the court through section 105 of the Bankruptcy Code.

### Inherent Power to Punish Contempt or Other Behavior

The facts can be seen as a ground for this Court to exercise its inherent authority to impose sanctions. *Franken v. Mukamal*, 449 Fed. Appx. 776 (11th Cir. 2011) (citing to *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008) and *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006)); *Hardy v. U.S.*, 97 F.3d 1384 (11th Cir. 1996); *In re Mroz*, 65 F.3d 1567 (11th Cir. 1995). "The power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123 (1991) (citing *Ex parte Robinson*, 19 Wall. 505, 510, 22 L.Ed. 205 (1874)). The *Chambers* court indicated that one type of contempt the courts may sanction under their inherent powers is "tampering with the administration of justice . . . [which] involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed.1250 (1944)). This is precisely the type of wrong allegedly committed in this case as it pertains to all debtors in this district.

### Statutory Power to Punish Contempt or Other Behavior

Section 105 of the Bankruptcy Code, entitled "Power of court," states in section 105(a) that "[n]o provision of [title 11] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to . . . prevent an abuse of process." Courts have recognized that § 105 "provides a bankruptcy court with statutory contempt powers, in addition

to whatever inherent contempt powers the court may have." *Bessette v. Avco Fin. Services, Inc. (In re Bessette),* 230 F.3d 439, 445 (1ˢᵗ Cir. 2000); *Knupfer v. Lindblade (In re Dyer*), 322 F.3d 1178, 1189 (9ᵗʰ Cir. 2003) (stating that "we have held that the Trustee may be entitled to recovery for violation of the automatic stay 'under section 105(a) as a sanction for ordinary civil contempt'"); *Adell v. John Richards Homes Building Company, LLC, et al. (In re John Richards Homes Building Company, LLC),* 475 B.R. 585, 594 (E.D. Mich. 2012) (holding that section 105(a) "facilitates compliance with the Bankruptcy Code and the bankruptcy court's orders, and compliance is one of the central goals of civil contempt sanctions"); *In re Moreno*, 479 B.R. 553 (Bankr. E.D. Cal. 2012); *Dunbar v. Cox Health Alliance, LLC (In re Dunbar)*, 446 B.R. 306, 310 (E.D. Ark. 2011) (stating that "section 105(a) does not create a private cause of action; . . . [h]owever, . . . the Court may use § 105(a) to redress violations of its general orders, the Bankruptcy Code, or the Bankruptcy Rules through a contempt proceeding").

In the case of *Cano v. GMAC Mortgage Corp. (In re Cano),* 410 B.R. 506 (Bankr. S.D. Tex. 2009), the court held that a nationwide class action alleging that a lender misallocated chapter 13 plan payments and collected unauthorized fees and expenses should not be dismissed when it alleged, in part, that the actions of the lender violated court orders confirming the plaintiffs' chapter 13 plans and violated Fed. R. Bankr. P. 2016. The court stated:

> Section 105 of the Bankruptcy Code grants courts broad authority to enter any order or judgment "necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Plaintiffs allege that GMAC has engaged in a nationwide, systematic practice of charging and hiding fees and costs without disclosing them to the bankruptcy court and in contravention of Bankruptcy Code provisions, Bankruptcy Rules, Court orders, and the fresh start purpose of chapter 13. If Plaintiffs prove their allegations, the remedy Plaintiffs seek may be "necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

*Cano*, 410 B.R. at 536.

In a case in the Northern District of Alabama, Judge Stilson also found that § 105 "would be an appropriate vehicle to bring a claim for fraud on the court because it is necessary for the court to be able to address frauds perpetrated on it." *Holman v. Citimortgage, Inc. (In re Holman)*, 2010 WL 1880424, at *4 (Bankr. N.D. Ala. 2010); *Canty v. Chase Home Finance, LLC (In re Canty)*, 2010 WL 1880710, at *4 (Bankr. N.D. Ala. 2010). Similarly, Judge Sawyer also found a cause of action under § 105 for fraud on the court or contempt was actionable. "Whether the Plaintiff's action is cast as one under § 105, the Court's inherent power, or an independent action for fraud on the court, a bankruptcy court may act to remedy the wrong complained of here. *Woodruff v. Chase Home Finance, LLC (In re Woodruff)*, 2010 WL 386209, at *9. As stated in *Rodriguez v. Countrywide Home Loans (In re Rodriguez)*, 396 B.R. 436, 457 (Bankr. S.D. Tex. 2008):

> While it is true that the considerable discretion conferred on courts sitting in bankruptcy by § 105 is not unlimited, in that it is not a 'roving commission to do equity,' . . . a court is well within its authority if it exercises its equitable powers to enforce a specific code provision . . . . Thus, §105 does not itself create a private right of action, but a court may invoke §105 'if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code.' (citations omitted).

The Court acknowledges that many courts have held that § 105 does not create a private cause of action standing alone or in conjunction with other Bankruptcy Code sections. Those cases are not like this one, as this case is based on the use of § 105 in conjunction with the court's contempt powers. *E.g., Joubert v. ABN AMRO Mortg. Group, Inc. (In re Joubert)*, 411 F.3d 452 (3rd Cir. 2005) (holding that section 105 does not afford a private cause of action for §506(b)-based issues); *Walls v. Wells Fargo Bank N.A.*, 276 F.3d 502 (9th Cir. 2002) (holding that no private cause of action exists under § 105 for § 524 violations); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000) (same); *Yancey v. Citifinancial, Inc. (In re Yancey)*, 301

B.R. 861 (Bankr. W.D. Tenn. 2003) (holding that no private cause of action exists under § 105 for Fed. R. Bankr. P. 2016 violations).

The actions of Wells Fargo, if proven, are a basis for remedial action based on fraud on the court. Fraud on the court is "egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated." *Stoecklin v. U.S.*, 285 Fed. Appx. 737, 738 (11th Cir. 2008) (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)). "Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Id.* Fraud on the court has five elements: (1) conduct of an officer of the court; (2) that is directed to the judicial machinery itself; (3) that is intentionally false, willfully blind to the truth, or in reckless disregard of the truth; (4) that is a positive averment or concealment when one is under a duty to disclose; and (5) that deceives the court. *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009).

As stated in *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985);

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or as a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

The facts as alleged fit this model. Wells Fargo used law firms to prepare and present relief from stay motions to the court. Those motions, per local rule, had to be accompanied by an affidavit. The court relied on those affidavits as establishing Wells Fargo's case-in-chief when the court considered relief from stay motions—whether contested or not. No relief from stay order was entered in a case involving real estate until an affidavit was filed. The affidavits, if prepared as alleged, were at least recklessly prepared under counsel's direction and submitted

10

by counsel to the court to obtain relief. The court and debtors were deceived as to the manner of preparation. If known, the court would have required a live witness from Wells Fargo for relief. The fraud occurred with each and every affidavit. The reckless preparation process was the same over and over.

> A "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense. Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms.

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (internal citations omitted).

Wells Fargo argues that the plaintiffs' theory of a common policy or procedure, of incorrect and reckless affidavit preparation and supervision of the same cannot be the basis for a class action. *Lightfoot v. Dist. of Colombia*, 273 F.R.D. 314, 325-29 (D.D.C. 2011) (rejecting plaintiff's overgeneralized characterization of "a common policy" when in fact, the facts showed only a "wide-ranging and poorly defined set of practices and policies'"); *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 682 (S.D. Fla. 2008) (rejecting a class where the "alleged standardized conduct . . . occurred under varying circumstances and under different contracts"). As the Inspector General's report shows, and the affidavits produced and depositions taken to date show, there was a relatively small number of affidavit preparers, notaries, supervisors and attorneys who prepared all of the affidavits in question. This was not scattered, individualized action. There are also cases where the lack of a policy has been grounds for certification of a class. *D.G. ex rel Stricklin v. Devaughn*, 594 F.3d 1188, 1196 (10th Cir. 2010) (stating "[n]amed Plaintiffs presented more than conclusory statements that . . . agency-wide monitoring policies and practices, or lack thereof, create a risk of harm shared by the entire class"); *Flores v. Anjost*

11

*Corp*, 284 F.R.D. 112, 126 (S.D.N.Y. 2012) (finding that a "common policy – or lack thereof" can result in commonality); *Armstrong v. Brown*, 857 F.Supp.2d 919 (N.D. Cal. 2012) (finding state government policies, or lack thereof, caused class harm).

As plaintiffs state, "fraud on the court involves two victims, the individual litigant against whom the tainted judgment was obtained and the court itself." Plaintiffs' Reply Brief in Support of Motion for Class Certification, October 7, 2012, p. 21. The court concludes that, if the facts alleged by the plaintiffs are true, the plaintiffs establish fraud on the court and establish an abuse of process as well. Both, as case law supports, are claims that are premised on the inherent powers of a court. Even if this court is incorrect about fraud on the court being an independent cause of action, it is "difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process—to combat those who would dare to practice unmitigated fraud upon the court itself." *Aoude v. Mobil Oil Corp.,* 892 F.2d at 1119. "To deny the existence of such power would ... foster the very impotency against which the *Hazel–Atlas* Court specifically warned." *Id*.

B.

Due Process and Procedural Issues

Wells Fargo asserts that its due process rights cannot be protected in a class action. Why? Because a sanction should not be based on the totality of the evidence related to the class as a whole. A sanction should be for action taken in an individual case. Wells Fargo also assumes that any relief given to the class by way of sanction would be punitive and criminal in nature.

The relief sought in this case is not criminal in nature. The court can enjoin future actions by Wells Fargo. This is not punitive if it involves preventing collection of fees for past

12

relief from stay motions or requires implementation of procedures that insure proper affidavits in the future. The relief would not be punitive if Wells Fargo were required to refund relief from stay motion fees and costs charged to debtors for affidavits that were prepared under past procedures or lack thereof on the basis that the affidavits had no value. The relief would not be punitive if attorneys fees were awarded to class counsel. The relief that would be punitive is if the court ordered Wells Fargo to pay a sanction or fine to the federal courts for each case's affidavit with none of the money compensating any of the debtors who were harmed.

The court does not intend to award purely punitive sanctions against Wells Fargo so long as these classes are certified. The preferable remedy is making the debtors as whole as possible and preventing future improper conduct. With this qualification, there is no due process concern or concern as to whether, as a bankruptcy judge, the court has authority to sanction. *In re C.W. Mining Co.*, 625 F.3d 1240 (10th Cir. 2010) (relying on *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444 (10th Cir. 1990)); *Price v. Lehtinen, et al. (In re Lehtinen)*, 564 F.3d 1052 (9th Cir. 2009); *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In the Matter of Terrebonne Fuel and Lube, Inc.),* 108 F.3d 609 (5th Cir. 1997); *In re Dorado Marine, Inc.*, 343 B.R. 711 (Bankr. M.D. Fla. 2006); *In re Matthews*, 184 B.R. 594 (Bankr. S.D. Ala. 1995).

Wells Fargo asserts that, if this is a civil contempt action, it must be brought by motion. As stated above, this is a civil, not a criminal, matter. Rules 9020 and 9014 state that a civil contempt action should be brought by motion. However, the court concludes that this adversary case is not improper in these circumstances.

> [C]ourts routinely hear contempt actions brought as adversary proceedings. *See, e.g. Laws v. First National Bank of Marin*, 2007 WL 1121266, 2007 Bankr. LEXIS 1352. Because the complaint in *Laws* requested that "the Court impose such penalties that this

Court would find appropriate," the *Laws* court denied the defendant's motion to dismiss on the issue of sanctions payable to the court for violation of the discharge injunction, even though the debtors admitted that defendant's conduct had not caused them to suffer any actual damages. *Laws*, 2007 WL 1121266, *3, 2007 Bankr. LEXIS 1252 at *9. *See also, Lohmeyer*, 365 B.R. at 754 (allowing debtors to amend complaint to include allegations of actual injury; *Schramm v. TMS Mortgage, Inc. (In re Schramm)*, No. 01-11026, 2006 Bankr. LEXIS 4470 (Bankr. N.D. Ohio, July 6, 2006) (denying motion to dismiss counts pertaining to violation of the discharge injunction); *Braun v. Champton Credit Union (In re Braun)*, 152 B.R. 466 (N.D. Ohio 1993) (affirming bankruptcy court's imposition of sanctions against creditor for violation of the discharge injunction); and *Beck v. Gold Key Lease, Inc. (In re Beck),* 272 B.R. 112, 114 (Bankr. E.D. Pa. 2002) (holding "that Plaintiff does not have a private right of action under § 524, [but] dismissal . . . [was] not warranted because Plaintiff has also alleged that [creditor] should be held in civil contempt for violating the discharge injunction").

To dismiss on procedural grounds alone would be to elevate form over substance. This is particularly true where – as here – an adversary proceeding provides more procedural protection for the defendant than does a contested matter brought by way of motion. *See, e.g., Beck*, 272 B.R. at 130. Furthermore, "even when filed as a motion, a contempt action can be handled in the same procedural manner as an adversary proceeding should a court so choose." *Id. See also, In re Bryant*, 340 B.R. 569 (Bankr. N.D. Tex. 2006) ("A bankruptcy court has discretion to treat a contested matter as an adversary proceeding [pursuant to Fed. R. Bankr. P. 9014(c)].") Given that this Court has the discretion to require the more structured discovery process of an adversary proceeding in a contested matter, the Court sees no reasons to require Debtors to dismiss this adversary proceeding and refile it as a contested motion. Such unnecessary "hoop jumping" would merely serve to increase the costs of litigation, without providing any real benefit to either party.

*In re Motichko*, 395 B.R. 25, 32-33 (Bankr. N.D. Ohio 2008).

Wells Fargo actually has more protection of its rights in an adversary proceeding due to all of the time and procedure safeguards in Fed. R. Bank. P. 7001-7087. Also, Rule 9014(c) allows a court to apply any or all of the adversary rules to a motion as well.

Second, as stated elsewhere, the court acknowledges that this is, as best the court can determine, a unique proceeding. The court has been harmed, but, there has also been harm to hundreds of debtors as well. A class action is the only way to provide relief to all. A court can exercise discretion and fashion a remedy that is appropriate to the circumstances. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

## 1. Class Action Issues

### A.

### Numerosity

Without knowing the exact number of cases that might be involved in the proposed class, the Court knows that the number of cases is very large. "Parties seeking class certification do not need to know the 'precise number of class members,' but they must make 'reasonable estimates with support as to the size of the proposed class*." Bennett v. Hayes Robertson Group, Inc.*, 2012 WL 2994246, at *4 (S.D. Fla. 2012) (citing *Hasting-Murtagh v. Texas Air Corp*., 119 F.R.D. 450, 459 (S.D. Fla. 1988)). The Eleventh Circuit has held that "generally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986). Wells Fargo Home Mortgage held and continues to hold numerous mortgages on properties of debtors in bankruptcy cases in this District. The plaintiffs have already offered into evidence 631 affidavits and these are only a sample of the entire number. It would be impracticable to locate and join all of the debtors in this suit. The class meets the numerosity requirement.

### B.

### Commonality

Commonality requires that there be "questions of law or fact common to the class." The plaintiffs have the burden to "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S.Ct. 2541, 2550-51, 180 L.Ed.2d 374 (2011) (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364 (1982)). The *Wal-Mart* case explained what this requirement means.

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that [all class members] have all suffered a violation of the same provision of law. . . [but that t]heir claims must depend upon a common contention . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
>
> What matters to class certification [,then,] is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.

*Wal-Mart*, 131 S.Ct. at 2551.

The common injury is a motion and affidavit that could not be trusted or relied upon by the court or debtors in each case.[2] Every debtor was allowed to be charged a "reasonable" attorneys fee and court costs for the filing and prosecution of the motion pursuant to 11 U.S.C. § 506. Each debtor's injury relies on the same essential facts, a motion and affidavit filed to obtain relief from stay and an attorneys fee and filing fee charged to the debtor's account for that filing.

---

[2] "Wells Fargo's affiants did not read the affidavits they signed on a wholesale basis. Therefore, the sworn testimony by Wells Fargo's affiants that they had 'personal knowledge and belief' of the factual statements in the affidavits they signed were not true—because they did not read the affidavits and did not know what the affidavit said. Since Wells Fargo's affiants did not read the affidavits, the affiants could not honestly swear that the factual statements were ' true and correct' 'to the best of my knowledge' 'under penalty of perjury.'" Plaintiff's Reply Brief in Support of Motion for Class Certification, Doc. # 201, filed October 7, 2011, page 2.

In every case, Wells Fargo filed an affidavit that, by its filing with a notarization, Wells Fargo represented was properly prepared, signed and notarized. Wells Fargo, per plaintiffs' evidence, knew that the processes and procedures it used to prepare the affidavits made the representations that the affidavit was prepared by someone with knowledge who properly swore to its accuracy under oath false. The injury can be calculated on a class-wide basis.

Wells Fargo asserts that the questions and answers are not common to all of the proposed class members because (1) some debtors' affidavits were not facially incorrect and, therefore, were not fraudulent or abusive or improper, and (2) debtors' affidavits that were incorrect are incorrect in different ways which may or may not be abusive or fraudulent or improper. Wells Fargo asserts individual, case-by-case inquiries are necessary.

The court concludes that plaintiffs, and not Wells Fargo, are correct. The focus is the abusiveness or fraudulence of the entire process employed by Wells Fargo—not what each affidavit states. If the process is what plaintiffs allege it is, the court cannot rely on any affidavit with confidence and the affidavits are per se improper. And the court did rely on the affidavits as stating the lender's case-in-chief. Due to the affidavits, no live testimony was required of a Wells Fargo employee. There does not need to be a policy that states "do this incorrectly." The issues, as here, can be the lack of a policy or the lack of supervision.

Wells Fargo asserts that not every affidavit is inaccurate and, therefore, analysis of each affidavit is necessary. There can be no fraud or abuse if an affidavit is correct. *See, e.g., Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000) ("Certification is improper if the merits of the claim turns on the defendant's individual dealings with each plaintiff."). The court disagrees. If every affidavit was prepared pursuant to a tainted process, every affidavit was untrustworthy at the time the court and debtors relied on it.

Debtors who had relief from stay motions filed by Wells Fargo from 1996-2008 were charged an attorneys fee and a filing fee for the preparation and filing of a motion, affidavit and order and for attending a hearing on a motion for relief from stay or for settling the matter before the hearing.  The court allowed reasonable attorneys fees to be charged for these activities.  If the plaintiffs' contentions are true, none of the affidavits filed were worth what the court assumed.  The affidavits were shoddily prepared—all of them.

Wells Fargo asserts that there is no evidence of any Wells Fargo policy or policies applying to all of the class members.[3]  *Wal-mar Stores, Inc. v. Dukes*, 131 S.Ct. at 2553, states that there must be "significant proof" that a defendant operates under a general policy.  The court disagrees.  The policy is one of requiring the affiants to handle numerous affidavits in short amounts of time without procedures in place that insured complete accuracy and truthfulness in court documents.  This production of affidavits without proper supervision and oversight and in numbers too large to allow due care is the policy at issue as this case has evolved, not just the cases with glaring deficiencies.  The affidavits with problems on their face merely brought the overall conduct to the attention of the court.  The test of commonality has been met.

## C.

### Typicality

Typicality requires that the Court make a finding that the class representatives have "the same interest and suffer the same injury" as all of the other members of the class.  *J.W. v. Birmingham Bd. Of Educ.*, 2012 WL 3849032, at *9 (N.D. Ala. 2012).  The universal defect in all of the affidavits is the substandard quality of the document.  The plaintiffs are typical of other class members.  Every affidavit was prepared under the same system and all lacked sufficient

---

[3] Although Wells Fargo admits that there was such a policy as to the pre-signing of signature pages at one point.

oversight and attention to detail and attention to state law about proper notarization. The typicality test is met.

## D.

## Adequacy of Representation

A class can only be certified when the class representative adequately represents all of the parties to be included in the class. "[T]he class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Birmingham Bd.*, 2012 WL 3849032, at *9. For the same reasons that the Wards and Brannans satisfy the typicality prong of the test, they satisfy the adequacy prong. Every affidavit was created in the same system and had the same alleged inadequate preparation. No one has questioned counsel's vigorous prosecution efforts. The adequacy of representation test is met.

## E.

## Rule 23(b) factors

Rule 23(b) is the part of the class action rule that establishes the type of class to be certified based upon the type of relief to be accorded the class and a class must satisfy one of its requirements. *Sikes v. Teleline Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002); *Jackson v. Motel 6 Multipoint, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). The first class described by the plaintiffs is a Rule 23(b)(3) class in which damages may be awarded for fees or costs paid by debtors for relief from stay motions filed by Wells Fargo. The second class is a Rule 23(b)(2) class to whom injunctive relief would be awarded with only incidental monetary relief.

1.

Rule 23(b)(2) class

The court previously ruled that an injunctive relief class would not be appropriate because "abuse of the bankruptcy process or fraud on the court is a remedy that is based upon injury to the court system as a whole rather than injury to individual debtors." Order Denying Plaintiff's Motion to Certify the Proposed Class But Allowing Leave to Amend, Doc. # 219, November 7, 2011, page 9. The plaintiffs asked the court to reconsider this ruling.

In order to establish the propriety of a class under Rule 23(b)(2), the plaintiffs must show that (1) the party opposing the class must have acted or refused to act or failed to perform a legal duty on grounds generally applicable to all class members; and (2) the class must seek final injunctive or declaratory relief with respect to the class as a whole. Fed. R. Civ. P. 23(b)(2). Plaintiffs allege that Wells Fargo posted fees and costs to all of the debtors' accounts and the fees and costs were for fraudulent or worthless services due to the practices and procedures followed by Wells Fargo in preparation of the motions and affidavits. The plaintiffs assert that these practices and procedures and the resulting motions and affidavits were a fraud on the court or abuse of the bankruptcy system.

The court, after review, concludes that plaintiffs are correct for several reasons. The injury to the court system that is alleged is best remedied by enjoining Wells Fargo from profiting from the harm. Enjoining collection of fees and costs for the improperly prepared motions and affidavits would be that relief. The court's earlier ruling focused on whether debtors had actually paid the fees. This was incorrect. The court is now convinced that Wells Fargo, if it engaged in improper practices, needs to be enjoined from collection to protect the debtors who may not have paid the fees or costs but could be subject to them in the future.

Without an injunctive class, this relief cannot be awarded. Any damages awarded to them would only be incidental to the injunctive relief. *Murray v. Auslander*, 244 F.3d 807 (11th Cir. 2001) The foremost relief is a declaration that no fees will be chargeable for affidavits from 1996-2008. Plaintiffs seek a group remedy. Every class member would be entitled to the same declaratory relief. Any damages would flow directly and incidentally from the declaratory relief. There are no claims for individualized relief and no trial for individualized relief will be necessary.

The Eleventh Circuit has stated:

> By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. Liability for incidental damages should not entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Murray*, 244 F.3d at 812.

2.

Rule 23(b)(3) Class

Rule 23(b)(3) requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The court believes that this requirement is met. The class as proposed contains only debtors who have paid attorneys fees and costs for affidavits and motions for relief from stay filed in their cases in the Southern District of Alabama from 1996-2008. There will be no individualized proof of damages. ALL cases will be treated the same based upon plaintiffs' allegations of systemic fraud, recklessness or negligence in preparation of affidavits. "Common

21

issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay v. Humana. Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)).  A class action is superior to individual cases due to the potential size of the class and the common facts, questions, and injury.  The court also concludes that there are no other suits commenced in this district against Wells Fargo and this litigation is the most efficient way to handle what are likely to be several hundred claimants.  The relatively small amount of compensatory damages would not justify individual suits.

CONCLUSION

The plaintiffs have met the necessary burden for class certification in this case.  Their allegations, if proven, state a claim against Wells Fargo that is actionable.

IT IS ORDERED that the motion of the plaintiffs for certification of the two classes of claimants as described in this order is GRANTED.

Dated:   January 8, 2013

MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE