IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In the Matter of:                          :
                                           :
MARK BRANNAN and                           :      Case No. 02-16647-MAM
KELLY BRANNAN,                             :      Chapter 13
                                           :
     Debtors.                              :
                                           :
MARK BRANNAN and                           :
KELLY BRANNAN,                             :
                                           :
     Plaintiffs,                           :
                                           :
v.                                         :
                                           :
WELLS FARGO BANK, N.A.,                     :      Adversary Proceeding No. 04-01037
                                           :
     Defendant.                            :

MOTION TO THE DISTRICT COURT FOR LEAVE TO APPEAL

        Pursuant to 28 U.S.C. § 158(a) and Rules 8001(b) and 8003 of the *Federal Rules of*

*Bankruptcy Procedure*, defendant Wells Fargo Bank, N.A., f/k/a Wells Fargo Home Mortgage,

moves the U. S. District Court for leave to appeal the bankruptcy court's January 8, 2013 order

granting plaintiffs' motion for class certification.[1]


Introduction and Summary

        The class certification ruling here goes beyond the bounds of what Rule 23, the Rules

Enabling Act, and the due process clause will tolerate.  It also goes beyond the jurisdiction of the

court below.  Given these direct conflicts with existing law, this ruling is a manifest abuse of

discretion, and it raises multiple legal questions of substantial importance.  For these reasons,

interlocutory appellate review is warranted and respectfully urged.

---

[1] This motion is timely pursuant to the Bankruptcy Court's order (doc. 272) extending the time to appeal by seven
days pursuant to Bankruptcy Rule 8002(c).

1

In this case, the bankruptcy court's reasoning makes apparent that its class certification ruling is driven not by the "rigorous analysis" of Rule 23's procedural prerequisites but rather by the court's conviction that a "fraud on the court" or "contempt" has occurred that must be redressed. As for the redress, the court has imposed a punitive assessment on Wells Fargo, described as "damages," in favor of purported class members, many of whose bankruptcy cases long since have been dismissed or fully-administered and closed (whether before the adversary proceeding was filed or during its pendency). Wells Fargo appreciates the depth of the court's convictions and understands the gravity of the issue. But using class certification as a vehicle to redress that perceived wrong contravenes and conflicts with fundamental principles of controlling law.

**First**, Rule 23 is not a remedy. Nor is it a vehicle to expand substantive rights or rob a party of its defenses. The class certification ruling abandons these limiting principles. The court identified a wrong and employed the class action device as a remedy and, in doing so, has expanded the class members' substantive rights and eliminated Wells Fargo's defenses. Indeed, the court's ruling makes it plain that in the context of class certification, it first has declared Wells Fargo's liability, thereafter has established what damages will be awarded, and done both without regard for Wells Fargo's ability to defend the claims with regard to liability, causation, or damages. This is exactly what the U. S. Supreme Court held in *Amchem Products, Inc. v. Windor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), will not be tolerated under Rule 23, the Rules Enabling Act, or as a matter of basic due process. These conflicts alone support this Court's review.

**Second**, controlling law establishes that before a class can be certified, a court must analyze whether Rule 23's prerequisites can be satisfied. That rigorous analysis likewise must

be measured against how the class members' claims will be tried with respect to liability, causation, damages, and defenses. The court did not make such an analysis, but summarily dispensed with the need for any inquiry into the elements of the class members' claims or the proof that would be required to meet them. Controlling law again will not tolerate that result and this conflict, too, supports an appeal.

**Third**, conflicts with Rule 23's specific requirements abound. The most pronounced are the direct conflicts with the reasoning in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Here, the bankruptcy court has authorized a trial-by-assumption, ignoring the established lack of cohesion in the class members' claims. A class representative must be a proxy for other class members and proof by representative must be, with some degree of certainty, proof for all. But the record in this case shows that not all class members are injured or even have a claim. As *Wal-Mart* makes clear, the lack of common answers for the purportedly common questions must end the certification analysis, but the bankruptcy court has rejected that notion and, in the process, created new law. Rule 23 cannot be relied on to supplant the need for individualized proof, no matter what the underlying circumstances or alleged wrong. Lastly, in conflict with *Wal-Mart*, the court has fashioned a Rule 23(b)(2) injunctive class where one does not, and cannot, exist. There is nothing here to enjoin, as the alleged practice has long ago ceased. This class action is about damages, pure and simple, and such a class cannot be certified under Rule 23(b)(2). These conflicts also support immediate appellate review.

**Fourth**, if the conflicts with established class action principles are not enough, there are serious questions raised concerning the court's jurisdiction to (1) act with respect to claims filed on behalf of former debtors whose cases have been dismissed or closed (before or during the pendency of the adversary proceeding) and (2) provide its selected punitive remedy. As to

jurisdiction, the court's proposed relief purports to extend to claims filed on behalf of debtors whose bankruptcy cases have been dismissed or closed. The court has no jurisdiction to take such an extraordinary step. And, with respect to damages, it is apparent that the court is acting punitively against Wells Fargo, imposing sanctions against it for individuals who it did not injure or who sustained no harm. Such quasi-criminal, not civil, contempt goes beyond the authority of an Article I bankruptcy court. Just as with the certification ruling itself, the court's authority to act in the manner it did raises serious questions that support this appeal.

To be sure, interlocutory appellate relief is not granted routinely. But such review should be granted as a matter course when the interests of justice call for it. So it is here. If a class action can exist in these circumstances, no other court has said so. And, there is substantial authority to the contrary. There also are eight other pending actions that are analogous to this one, and the erroneous ruling entered below accordingly has consequences beyond this case. This Court should take up this appeal to avoid the injustice that will be perpetrated if the class certification ruling stands.

Federal Rule of Bankruptcy Procedure 8003 Requirements

A.     Facts Necessary to an Understanding of the Questions to be Presented

Plaintiffs brought an action in the U.S. Bankruptcy Court for the Southern District of Alabama for "fraud on the court" and sought certification of classes under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) of every debtor in whose bankruptcy cases Wells Fargo had filed affidavits over a 13-year period, from 1996 through 2008. In bankruptcy, a creditor holding a mortgage loan on a debtor's home must file a motion for relief from stay under Bankruptcy Code § 362(d) before foreclosing because a debtor has not made post-petition payments. By local rule,

4

creditors such as Wells Fargo are allowed to present evidence of their secured debt and the default by affidavit.

Plaintiffs did not present any evidence regarding Wells Fargo's affidavit practices during the first several years of the class period. They also produced no evidence of any uniform policy by Wells Fargo regarding the allegedly fraudulent preparation of affidavits. Other than the one-sentence provision in the pre-2004 version allowing the use of "pre-signed" affidavit signature pages, Wells Fargo's default management guidelines did not contain any instructions on procedures regarding the form and execution of affidavits in bankruptcy court. [Def. Exs. 28, 29, and 30.] Instead, Wells Fargo relied on its outside counsel to prepare and file affidavits in accordance with local requirements. [Miller depo. at 38-40.].

Nor did plaintiffs allege or attempt to prove that all of the affidavits filed over the 13 years were defective. Wells Fargo introduced evidence showing that many affidavits had no problems. Plaintiffs did not contend or prove that the class members had relied on the alleged fraud by Wells Fargo. In fact, class plaintiffs Kelly Brannan, Johnny Ward, and Minnie Ward each testified that they never saw the affidavits filed in their respective bankruptcy cases.[2] [Brannan depo., p.33; J. Ward depo., pp. 24-26, 35-36; M. Ward depo., pp. 15-16.] Their bankruptcy counsel also could not recall whether she ever saw the affidavits in the Brannan and the Ward bankruptcy cases. [8/17/11 Robertson depo., p.37; 11/5/12 Robertson depo., pp. 31, 44-45.]

Plaintiffs did present evidence that Wells Fargo and its attorneys had filed affidavits with a variety of problems. But these problems were idiosyncratic, and most of the 25 challenged problems were not material or meaningful and had nothing to do with the conduct of the

---

[2] The original class plaintiffs were Mark and Kelly Brannan. Mark Brannan has never participated in this litigation. After the first class certification hearing, plaintiffs sought to add Johnny and Minnie Ward as class plaintiffs, and they were subsequently added.

bankruptcies or the issues resolved in those proceedings. With rare exceptions, the material information contained in the allegedly fraudulent affidavits was correct — that is, the debtors had a home mortgage with Wells Fargo and they had missed certain post-petition payments. Plaintiffs did not allege or prove that relief from stay had been wrongfully granted based on an incorrect affidavit in any bankruptcy case and did not seek to set aside any orders. The court identified 25 different types of alleged affidavit problems, ranging from a missing date in a notarization to a discrepancy in job titles ("bankruptcy specialist" versus "bankruptcy supervisor"). [Doc. 219, at pp. 3-4.] Many of the alleged problems were disputed, and almost all were apparent on the face of the documents. The class representatives and their Chapter 13 counsel were unable to identify any problems with the affidavits filed in their own bankruptcy cases. [Brannan depo., p. 31; 8/17/11 Robertson depo., pp. 44; 11/15/12 Robertson depo., pp. 32-33, 47.]

The only "damage" plaintiffs identified was that, if the bankruptcy court denied the motion conditioned on the debtors making future payments, the court usually assessed the motion filing fee and corresponding attorney's fees to the debtors, which, in most cases, amounted to less than $750.00. Class representatives Johnny and Minnie Ward had paid the fees through their Chapter 13 plan; class representative Kelly Brannan did not and has been relieved from liability on her Wells Fargo mortgage loan pursuant to a "short sale" of her house. [Brannon depo., p. 48, Def. Ex. 11.]

Most of these bankruptcy proceedings (over the 13 years) already have been dismissed or fully-administered and closed, with final judgments of record.

Notwithstanding the absence of proof, or problems, or even any evidence of a viable claim, the bankruptcy court certified the class for the full 13-year period from 1996 to 2008.

And it did so indiscriminately as to all class members, without regard for the facts of their particular cases or the status of their respective bankruptcy proceedings. The route the court charted to this extraordinary and unprecedented result exposes the serious questions that underlie this appeal.

To begin with, the court did not start with an analysis of Rule 23, but instead focused on its own power to redress what it alternatively described as a "fraud on the court" or "contempt" perpetrated through the affidavits submitted and filed by Wells Fargo. That alleged fraud, purportedly directed solely at the court, then became the over-arching common issue that justified class certification, without regard for how such a fraud conceivably could be translated into a cause of action for any affected claimant. On the contrary, class certification instead became the vehicle to get from a "fraud on the court" on the one hand, to the punishment the court sought to impose, on the other. Even the "presumed reliance" the court employed to override Wells Fargo's defenses was court-directed. No class member claimed to have relied on, or been injured by, the affidavits.

Having declared that the "fraud on the court" could provide a recovery for an individual class member, the court then made short work of the class certification analysis, summarily dispensing with any examination of a class member's claim or their particular circumstances. Every class member would be treated the same because Wells Fargo's "fraud on the court" existed in every claim. The court then laid out a damage analysis that followed form. Having concluded that certain filing and attorney's fees should not have been assessed because of the fraud, all class members would be entitled to recover those amounts, without regard to whether they were paid or incurred.

Case 04-01037   Doc 276   Filed 01/29/13   Entered 01/29/13 15:21:39   Desc Main
Document   Page 7 of 28

In each instance, Wells Fargo's arguments about the need for individualized proof to show reliance or causation or damages were rejected. As far as the court was concerned, the "fraud on the court" displaced the need for any proof to substantiate a claimant's cause of action. Rather, the harm to the court's interests provided the substantiation to punish Wells Fargo by paying the class members. As far as plaintiffs' respective classes were concerned, the court granted certification under Rule 23(b)(3), again without regard for the disparities in individual proof. Class certification also was granted under Rule 23(b)(2) because of the purported over-riding need to enjoin Wells Fargo from doing something it might do in the future (further wrongful-signing of affidavits), not something that it is doing at present.

B.      Question(s) Presented by the Appeal and Relief Sought

The appeal presents at least the following questions:

(1)      Whether a bankruptcy court abuses its discretion by using a class action as a vehicle to expand the substantive law, eliminate the need for individualized proof, and rob a defendant of its available defenses;

(2)      Whether a bankruptcy court abuses its discretion in certifying a class under Rule 23 without a rigorous analysis of disparities in proof that would expose the lack of cohesion in the class members' respective claims;

(3)      Whether a bankruptcy court abuses its discretion in certifying classes based on an allegedly tainted "process" of preparing affidavits for use in bankruptcy court, where the classes admittedly include (a) debtors whose affidavits had no problem(s), (b) debtors whose bankruptcies took place during time periods regarding which plaintiffs offered no evidence, (c) debtors who have incurred no damages as a result of any alleged errors, and (d) debtors whose cases have been dismissed or closed (either *before* the filing of, or during the pendency of, this adversary proceeding); and

(4)      Whether a bankruptcy court abuses its discretion in providing classwide relief by allowing a collateral attack on dismissed or fully-administered and closed final bankruptcy adjudications and through punitive sanctions that do not reflect individualized harm?

8

The relief sought is a reversal of the bankruptcy court's order granting class certification.

C.     Statement of Reasons Why an Appeal Should be Granted

A bankruptcy court's class certification order may be appealed pursuant to, *inter alia*, 28 U.S.C. § 158(a), which states that the district court has jurisdiction to hear appeals with leave of court from interlocutory orders of bankruptcy judges. *See Chrysler Fin. Corp. v. Powe*, 312 F.3d 1241, 1245-46 (11th Cir. 2002); *see also* Fed. R. Bankr. P. 8001(b); 28 U.S.C. § 158(d)(2).

In the class certification context, "the district court's discretion to entertain an interlocutory appeal from the bankruptcy court is analogous to the court of appeals' discretion to entertain a Rule 23(f) appeal from the district court." *See Chrysler*, 312 F.2d at 1245-46. As a result, in determining whether to grant interlocutory appellate review of a class certification order, this Court can consider:

(1)     Whether the trial court's ruling is likely dispositive of litigation by creating a "death knell" for either side;

(2)     Whether the petitioner has shown a substantial weakness in the class certification decision such that the decision likely constitutes an abuse of discretion;

(3)     Whether the appeal will permit resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself;

(4)     The nature and status of litigation before the trial court; and

(5)     The likelihood that future events may make immediate appellate review more or less appropriate.

*See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274-76 (11th Cir. 2000).

This is not an exhaustive list, and "there may well be special circumstances that lead [a court] to grant [interlocutory review] even where some or all of the relevant factors point to a different result." *See id.* at 1276. In this case, each one of the relevant factors points decidedly

9

towards allowing this appeal. The extraordinary and unprecedented nature of the class certification order also provides a special circumstance that further supports immediate appellate review.

      i.     <u>The bankruptcy court's ruling sounds the "death knell" for Wells Fargo</u>.

As *Prado-Steiman* provides, interlocutory review is warranted where the class certification ruling sounds the "death knell" for either the plaintiff or the defendant. Given the substance of the ruling, the class certification order here certainly sounds the "death knell" for Wells Fargo, warranting an immediate appeal.

That order goes beyond Rule 23's confines and finds Wells Fargo guilty of a "fraud on the court," holds that no defense to that fraud is possible no matter what proof might be offered on any claim, and determines the damages that will be awarded per class member (relative to specific filing and attorneys' fees) as long as those fees are reflected in the record of a bankruptcy proceeding. For all intents and purposes, this certification order is the end of this case as far as Wells Fargo's rights are concerned and the harm that follows from these summary findings is immediate and irreparable.

      ii.     <u>The bankruptcy court abused its discretion in certifying the classes because its ruling conflicts in multiple respects with controlling law.</u>

"Interlocutory review may be appropriate when it promises to spare the parties and the [trial] court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed . . . on an appeal after final judgment." *See Prado-Steiman*, 221 F.3d at 1274-75. "In that situation, interlocutory review may be warranted even if none of the other factors supports" review. *See id.* at 1275. "[T]his factor should be viewed as a sliding scale. The

stronger the showing of an abuse of discretion, the more this factor weighs in favor of interlocutory review." *See id.* at 1275 n.10. Under this standard, the bankruptcy court's certification decision clearly warrants interlocutory review.

a. <u>The bankruptcy court erred in certifying this class because the order violates the Rules Enabling Act and due process.</u>

Consistent with the Rules Enabling Act, Rule 23, as a rule of procedure, cannot be used to "abridge, enlarge, or modify any substantive right . . . ." *Amchem Prods., Inc.*, 521 U.S. at 612-13 (citation and quotation marks omitted); *Ortiz*, 527 U.S. at 845; *see also* 28 U.S.C. § 2072(b). The bankruptcy court failed to heed this limitation.

Here, the court improperly used Rule 23 first as a remedial device to expand the class members' alleged rights, and next as a substantive tool to foreclose Wells Fargo's defenses. On the former, it transformed what it described as a "fraud on the court" into a cause of action for an affected class member that relieved the class member of his or her burden of proving any elements, including liability, causation and damages.[3] On the latter, Wells Fargo is now powerless to defend against this cause of action, even where it could show, through undisputed proof, that there is no basis for liability, causation, or damages in the circumstances of a particular class member's claim. As the relevant case law provides, the Rules Enabling Act stops this exercise before it starts.

For example, in *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990), the Fifth Circuit reversed a class certification ruling that substituted a trial based on statistical analyses for

---

[3] It is well-established that perjury is not "fraud on the court" because "it does not prevent a party from gaining access to an impartial system of justice." *See SEC v. ESM Group, Inc.*, 835 F.2d 270, 273 (11th Cir. 1988) ("perjury ... does not constitute fraud upon the court") (quoting *Travelers Indemnity Co. v. Gore*, 761 F.2d 1549, 1551 & 1552 (11th Cir. 1985)). It is hard to reconcile with such precedent that a declaration that, for example, misspells the declarant's name can rise to the level of "fraud on the court." The bankruptcy court really seeks to use "fraud on the court" to eliminate specific proof of the elements of fraud (like reliance) and to justify a private cause of action with no real elements.

11

determinations of causation and injury based on individualized proof. *See id.* at 711-12. The court held that Rule 23 could not be used to modify or support substantive law in that fashion. *See id.* (the trial plan would "treat[] discrete claims as fungible claims" and "lift[] the description of the claims to a level of generality that tears them from their substantively required moorings to actual causation and discrete injury"). Other courts agree that efforts to use Rule 23 to expand or abridge rights must be rejected. *S*ee *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) (reversing class certification as inconsistent with the Rules Enabling Act because there likely "was a breach of contract with some class members, but not with other class members" such that classwide relief would lead to "an abridgment of the defendant's rights") (citation omitted); *Hohider v. UPS, Inc.*, 574 F.3d 169, 185-86, 196-98 (3d Cir. 2009) (reversing class certification of an ADA claim where use of Rule 23 changed the substance of the claim in violation of the Rules Enabling Act); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 66 (4th Cir. 1977) (affirming district court's refusal to certify an antitrust class action because "issues of injury and damage" were "strictly individualized" such that classwide determination would "contravene the mandate of the Rules Enabling Act").

In this case, the court's refusal to allow Wells Fargo to defend claims where it can demonstrate that there is no liability also abridges Wells Fargo's due process rights. Class actions, at bottom, are supposed to fairly replicate what would happen at an individual trial and a classwide trial therefore must permit a defendant to raise all available defenses. Due process encompasses the right "to litigate the issues raised," *U. S. v. Armour & Co.*, 402 U.S. 673, 682 (1971), and this includes all available defenses. *Lindsey v. Normet*, 405 U.S. 56, 66 (1972). The bankruptcy's court's ruling has guaranteed that this will not occur here. On the contrary, Wells Fargo will be forced to pay damages to individuals who it did not injure and who sustained no

harm. This is a due process violation of the most basic sort, and that injustice should be rectified by granting this appeal.

> b.    <u>The bankruptcy court erred in certifying this class because it failed to employ the "rigorous analysis" Rule 23 requires.</u>

Class actions are an "'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The Supreme Court has made clear that a class action should be certified *only if* it will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615 (citation and quotation marks omitted).

Therefore, a court considering class certification must conduct a "rigorous analysis" to determine whether the proposed class can satisfy Rule 23's prerequisites. *See Falcon*, 457 U.S. at 160-61. The representative plaintiffs bear the burden of showing that each of the four requirements of Rule 23(a) (i.e., numerosity, commonality, typicality, and adequacy of representation) is met and also of demonstrating the appropriateness of a class action under one of the Rule 23(b) subparts. *See Vega v. T-Mobile, USA, Inc.*, 564 F.3d 1256, 1265-67 (11th Cir. 2009).

Consistent with the rigorous analysis required by Rule 23, each named plaintiff's alleged "similarity of claims and situations" with the putative class "must be demonstrated rather than assumed." *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (citing *Falcon*, 457 U.S. at 160)); *see also Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003) ("[T]he burden is on the plaintiffs to make an evidentiary showing that they and

Case 04-01037    Doc 276    Filed 01/29/13    Entered 01/29/13 15:21:39    Desc Main
Document     Page 13 of 28

the proposed class are similarly situated, not on the defendants to disprove such similarity.")

Thus, rather than making assumption or presumptions, the trial "court must make whatever

factual and legal inquiries are necessary to ensure that requirements for class certification are

satisfied . . . even if those considerations overlap the merits of the case." *See Am. Honda Motor

Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010). "[A]ctual, not presumed, conformance with

Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160. Similarly, in determining whether

common or individual issues predominate for Rule 23(b)(3), purposes a "court must formulate

some prediction as to how specific issues will play out" at a trial on the merits. *See In re

Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2009) (citation and quotation

marks omitted). 'If proof of the essential elements of the cause of action requires individual

treatment, then class certification is unsuitable.' *Id.* (citation omitted).

The bankruptcy court plainly disclaimed the required rigorous analysis in this case. Its

treatment of Rule 23's prerequisites is cursory at best, and rather than acknowledging how the

disparities in proof affected resolution of the class members' individual claims, it dismissed

those variations entirely. In that fashion, the court changed the law governing class certification

in the most profound way imaginable. Once a rigorous analysis showed unavoidable disparities

in proof, as it did in this case, the court had no discretion except to deny class certification. The

court's failure to heed what controlling law required also supports granting leave to appeal.

    c.    <u>The bankruptcy court erred in certifying a class based on Wells Fargo's allegedly tainted "process," since the class admittedly includes debtors whose affidavits had no problems and debtors whose bankruptcies took place before the time period regarding which plaintiffs offered evidence.</u>

In certifying the classes at issue, the bankruptcy court found that the applicable "common

injury [to the class members] is a motion and affidavit that could not be trusted or relied upon by

the court or debtors in each case." In doing so, the bankruptcy court ruled that *even if an affidavit were correct,* because it "was prepared pursuant to a tainted process, every affidavit was untrustworthy at the time the court and debtors relied on it." [Doc. 269, attached, at p.12.] This analysis too represents a manifest conflict with existing law and supports an immediate appeal for several reasons.

First, even if one assumes a common scheme adversely affecting all class members here — and that assumption is demonstrably wrong — a fraud cause of action requires more than a scheme. There also must be proof of materiality, reliance, causation, and damages. These inquiries are class member-specific, but the bankruptcy court failed to credit a single one of them. *See, e.g., Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 679-82 (N.D. Ga. 2003) (finding that the plaintiff's claim was an improper "across-the-board" proposed class that attacked all of the defendant's conduct when it would require individualized, fact-specific determinations pertaining to each purported class member); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) ("Countless members of [plaintiff]'s putative class could not show any damage, let alone damage proximately caused by [defendant]'s alleged deception.") (affirming district court's denial of class certification). Moreover, the 13-year class certified by the bankruptcy court clearly includes debtors whose affidavits had no problems; *i.e.*, the classes include members who suffered no damages, but the court refused to credit this fact either. Yet, those individuals have no standing to sue. See 7AA Charles Alan Wright, et al., *Federal Practice & Procedure* § 1785.1 (3d ed.) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention."). And, class certification is inappropriate where

> it cannot be reasonably clear that the proposed class members have all suffered
> a[n injury] warranting some relief. If the conceived injury is abstract, conjectural

> or hypothetical as here, instead of real, immediate or direct, the complaint fails to cite an actual case or controversy under Article III of the Constitution.

*Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (citing *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974)); *see also, e.g.*, *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (A trial court "may not certify a class . . . 'if it contains members who lack standing.' If members 'who lack the ability to bring a suit themselves' are included in a class, the court lacks jurisdiction . . . .") (citation omitted); *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 2011 WL 4381912, at *3 (D.N.D. Sept. 20, 2011) ("It is axiomatic that a [trial] court may not certify a class if it contains members who lack standing.").

In addition, in holding that the alleged injury was that "[i]f every affidavit was prepared pursuant to a tainted process, every affidavit was untrustworthy at the time the court and debtors *relied on it*" (doc. 269, at p.12, emphasis added), the bankruptcy court incorrectly *presumed* reliance, an element of plaintiffs' cause of action for fraud, even though the actual class representatives admitted that they did <u>not</u> ever see the affidavits. Thus, the record shows that reliance is an individualized inquiry because the class, of necessity, includes those who could not have relied on the allegedly tainted affidavits and certainly could not have been damaged by any "process" by which the affidavits were created, tainted or otherwise. In these circumstances, controlling law holds that fraud claims are not amenable to class certification, but the bankruptcy court has taken the opposite view.

Second, the court's finding of a purported common "injury" in the form of a tainted affidavit process is not even applicable to the early years of the class period when there has been no proof of *any* wrongdoing by Wells Fargo, much less a "pervasive" practice during those years. *See, e.g.*, *Adashunas*, 626 F.2d at 604; *Blumenthal v. Great Am. Mortgage Investors*, 74 F.R.D. 508, 515 (N.D. Ga. 1976) ("To the extent that plaintiffs seek to rely upon any purported

uniform or standardized misrepresentations or omissions, it is clear that purchasers within the 1969-1971 period must be excluded from any class ultimately certified, since their purchases antedate the issuance of any common and relevant representations contained in documents in the amended complaint.").  The bankruptcy court thus erred in certifying a class and potentially awarding damages to class members who did not suffer any and whose bankruptcies occurred during time periods for which there is not a shred of evidence that there was anything wrong with the affidavits *or* the "process."  This error likewise supports granting this appeal.

      d.    <u>The bankruptcy court abused its discretion in ignoring individualized issues and certifying classes where there is no true common injury, contrary to the commonality standard set forth in *Wal-Mart v. Dukes*.</u>

As stated by the Supreme Court in *Wal-Mart v. Dukes*, 131 S. Ct. 2541, "any competently crafted class complaint literally raises common questions." *Id.* at 2551 (citation and quotation marks omitted).  The real issue is whether there will be common *answers*:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that [all class members] have all suffered a violation of the same provision of law . . . [but that t]heir claims must depend upon a common contention . . . .  That common contention, moreover, must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

> What matters to class certification[, then,] is not the raising of common questions —even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (citations and quotation marks omitted).

Significantly, the allegedly fraudulent affidavits had over two dozen other types of alleged irregularities, the "falsity" of which Wells Fargo contested.  Plaintiffs made no "common

contention[,]" and certainly not one the determination of which "will resolve an issue that is central to the validity of *each one* of the claims *in one stroke*." *See id.* (emphasis added). Even if the court ultimately finds that Wells Fargo employees were sloppy in executing affidavits in many different ways in the early to mid-2000s, such a finding would not resolve any question as to the class; each class member's individual affidavit and surrounding circumstances will still have to be examined separately to see exactly what the problem was, whether there was any actual falsity, whether the class member and the court actually relied upon the affidavit, and whether the alleged falsity caused any damages.

As in *Wal-Mart*, significant proof of any general policy of filing improper or false affidavits, which is required, "is entirely absent here." *See id.* at 2553.

The individualized questions for each bankruptcy case thus involve, at a minimum:

1.     Does the alleged irregularity actually constitute an "improper or false" affidavit?

2.     Was the affidavit actually seen and relied upon by an individual class member? As discussed, the named class members themselves did not rely, so it is likely that numerous other class members do not meet this element of fraud, either.

3.     Was the alleged irregularity evident such that the debtors are now barred from challenging the affidavit by *res judicata* or waiver?  With the exception of the pre-signed affidavits and possibly some affidavits where the employment of the affiant as stated in the affidavit is erroneous or in dispute, the other alleged irregularities were apparent on the face of the affidavits.

4.     Finally, did the debtors suffer any damages as a result of the alleged irregularity? If so, what are those damages?  Did the debtors actually pay the attorney's fees which are now

Case 04-01037    Doc 276    Filed 01/29/13    Entered 01/29/13 15:21:39    Desc Main
Document      Page 18 of 28

sought?  As discussed, Wells Fargo introduced into evidence many affidavits which do not appear to have any problems.

None of these issues is susceptible to classwide proof and none will generate common answers. *See Wal-Mart*, 131 S. Ct. at 2551.  These are not questions to which a common answer "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Put simply, there were and are no common issues in this case that are susceptible to classwide proof.  The bankruptcy court erred in certifying a class where the issues will necessarily require individualized evidentiary inquiries as to each purported member of the proposed class and will not result in common *answers*, as Rule 23(a)'s commonality requirement and *Wal-Mart* require. This error again should be rectified by an immediate appeal.

      e.      <u>The bankruptcy court erred in granting class certification under Rule 23(b)(2).</u>

Rule 23(b)(2) "operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members."  *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000).  Indeed, Rule 23(b)(2) requires "even greater cohesiveness" than is required in a Rule 23(b)(3) action because in a (b)(2) class, "unnamed members are bound by the action without the opportunity to opt out. . . ."  *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005) (citation and quotation marks omitted).  As noted above, however, there is no such cohesion here and the court's decision to grant certification under this prong of Rule 23 is in conflict with controlling law as well.

What is left in this case — albeit improperly as shown below — is a damages claim. While the bankruptcy court asserts that injunctive relief is needed to forestall possible future conduct by Wells Fargo, equity does not operate in the abstract. Nor would any claimant in this case be helped by an injunction, and an injunction cannot issue over past conduct alone. In reality, what remains, if anything, is a damages claim, pure and simple. Rule 23(b)(2) class certification is unavailable where damages are the primary relief sought. As *Dukes* makes clear, certification under Rule 23(b)(2) is impermissible unless monetary damages are incidental to the injunctive relief sought. See 131 S. Ct. at 2557-60. An immediate appeal is needed for this reason also.

        f.     <u>The bankruptcy court erred by determining that it can award sanctions based on claims asserted on behalf of individuals (a) who were not debtors in bankruptcy *when this adversary proceeding was filed* because their bankruptcy cases were dismissed or fully-administered and closed or (b) whose cases were dismissed or fully-administered and closed, without an express retention of jurisdiction, during the pendency of this adversary proceeding.</u>

The certified class includes debtors who filed chapter 13 from 1996 to 2008. The adversary proceeding was filed in 2004. Thus, certain debtors in the certified class had filed bankruptcy as long as six years before the adversary proceeding was filed.

Many of the alleged class members' bankruptcy cases were dismissed or closed[4] *before* the adversary proceeding was filed. The bankruptcy court had no jurisdiction over claims allegedly filed on behalf of those debtors that were not even in bankruptcy when the adversary proceeding was filed. The bankruptcy court also lacked jurisdiction of claims allegedly filed on

---

[4] "Dismissal" and "closure" are distinct "terms of art employed in the Bankruptcy Code." *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 n. 1 (6th Cir. 1998). Reopening a closed case does not undo dismissal of the case. *See In re Income Prop. Builders, Inc.*, 699 F.2d 963, 965 (9th Cir. 1982) (dismissed case cannot be reopened); *In re Finch*, 378 B.R. 241, 246 (B.A.P. 8th Cir. 2007) (dismissal can only be undone by appeal or Rule 9023 or 9024 motion).

behalf of class members whose bankruptcy cases were dismissed or closed – without an express retention of jurisdiction-after the adversary proceeding was filed.[5]

It is hornbook law that the existence of federal jurisdiction is determined based "on the facts as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (citation and emphasis omitted). Therefore, it is important to distinguish between claims asserted on behalf of (a) individuals whose bankruptcy cases were dismissed *before* the adversary proceeding was filed in 2004 and (b) individuals whose cases were pending when the adversary proceeding was filed. *See In re Smith*, 2008 WL 7874258, at *3 (Bankr. N.D. Ga. Aug. 18, 2008) ("In *Morris*, there was no question that the bankruptcy court had subject matter jurisdiction in the adversary proceeding at the time it filed. The issue was whether the bankruptcy court retained subject matter jurisdiction that it possessed prior to the dismissal of the main case, because it failed to expressly reserve jurisdiction. By contrast, the threshold issue here is whether this Court had jurisdiction in this adversary proceeding on February 1, 2007 when it was filed.").

In *Smith*, the bankruptcy court held that it lacked jurisdiction of an adversary proceeding filed after the automatic stay was lifted and the bankruptcy case was closed. *See id.* at *4. The court reasoned that "as of the filing of th[e] adversary proceeding," the claims were "immaterial. . . ." *See id.* Similarly, the District Court for the Middle District of Alabama, addressing a "closed" case, held that a civil action could not be removed to the bankruptcy court where the underlying bankruptcy case had been closed. *See Cook v. Chrysler Credit Corp.*, 174 B.R. 321,

---

[5] The bankruptcy court's lack of subject matter jurisdiction may be raised for the first time in this appeal. *See, e.g., U.S. v. Giraldo-Prado*, 150 F.3d 1328, 1329 (11th Cir. 1998) ("We have noted that a party may raise jurisdiction at any time during the pendency of the proceedings."); *see also U.S. v. Cotton*, 535 U.S. 625, 630 (2002) ("[s]ubject-matter jurisdiction . . . can never be forfeited or waived" and "[c]onsequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court."). Even if none of the parties raised the issue of subject matter jurisdiction, a federal court is required to do so on its own motion. *See Bochese v. Ponce Inlet*, 405 F.3d 964, 968 (11th Cir. 2005) ("Although the parties have not raised the issue here, we are obliged to consider, *sua sponte*, the question of our subject matter jurisdiction to hear the case before us.").

327 (M.D. Ala. 1994). The court recognized that the bankruptcy jurisdictional scheme was designed "to contemplate pending bankruptcy proceedings." *See* id.

It is inconceivable that an Article I court would have jurisdiction to adjudicate claims filed on behalf of class members whose bankruptcy cases were dismissed or fully-administered and closed *before* the adversary proceeding was filed. There was no bankruptcy case to which such claims related or in which those claims could be filed.

In addition, certain other plaintiff class members were debtors in bankruptcy cases when the adversary proceeding was filed. Those plaintiffs' bankruptcy cases, however, were dismissed or closed during the pendency of the adversary proceeding, without the bankruptcy court expressly retaining jurisdiction of claims filed on behalf of such plaintiffs in the orders dismissing or closing those cases.

In 1992, the Eleventh Circuit Court of Appeals held that "the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement." *In re: Morris*, 950 F.2d 1531, 1534 (11th Cir. 1992). Two years after *Morris*, however, the Supreme Court decided *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), which addressed a federal court's jurisdiction of a dispute relating to a settlement agreement after the underlying litigation was dismissed. The Supreme Court held that a court's ancillary jurisdiction "to manage its proceedings, vindicate its authority, and effectuate its decrees" provides an independent jurisdictional basis only "if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal. . . ." *See id.* at 380–81.

To retain post-dismissal jurisdiction under *Kokkonen*, a court now must expressly retain jurisdiction. *See Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 431-32 (5th Cir. 2002); *In re*

*Phar–Mor, Inc. Sec. Litig.*, 172 F.3d 270, 275 (3d Cir. 1999) ("[u]nder *Kokkonen*, unexpressed intent is insufficient to confer subject matter jurisdiction.").[6]

In this case, the bankruptcy court asserted that it was exercising its "inherent power" to sanction Wells Fargo. [Doc. 269, at p.7.] The Supreme Court, however, rejected the contention that notions of inherent power survive dismissal of a case where jurisdiction was not specifically retained in the dismissal order. *See Kokkonen*, 511 U.S. at 380 (rejecting any such resort to notions of "inherent power" as surviving a dismissal order); *see also Shaffer v. GTE North, Inc.*, 284 F.3d 500, 504 (3d Cir. 2002) (noting that Supreme Court in *Kokkonen* "rejected any such resort to notions of 'inherent power' as surviving a dismissal order").

g.  <u>The bankruptcy court has no authority to issue the proposed far-reaching damage award that it seeks to impose.</u>

Equally far reaching is the damage award the court has endeavored to impose. Only a relatively few of the class members have actually paid the filing or attorney's fees reflected in their respective bankruptcy cases. Nevertheless, in circumstances where proof would show that no harm has occurred, the court has directed a monetary sanction against Wells Fargo to redress a "fraud on the court." That is a quasi-criminal contempt sanction[7] that goes beyond the power of an Article I court.[8]

---

[6] *Kokkonen* applies to Article I bankruptcy courts. *See In re Lopez*, 117 F.3d 1417, 1997 WL 336252, at *1 n.2 (5th Cir. June 3, 1997); *In re Hanks*, 182 B.R. 930, 933 n.4 (Bankr. N.D. Ga. 1995) ("[A]ny limitations placed upon district court jurisdiction in *Kokkonen* also restrict bankruptcy courts.") Although bankruptcy courts are Article I courts, they are still subject to Article III's jurisdictional constraints. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76 (1982) ("Nor can we discern any persuasive reason, in logic, history, or the Constitution, why the bankruptcy courts here established lie beyond the reach of Art. III."). The Supreme Court has twice found unconstitutional at least some portion of the statutory scheme for allocating bankruptcy jurisdiction to the Article I bankruptcy courts. *See Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011); *Marathon Pipe Line Co.*, 458 U.S. at 87. Thus, it would be inappropriate to conclude that a restriction on an Article III court did not apply, at least equally, to an Article I bankruptcy court.

[7] Civil contempt sanctions under Section 105(a) are unavailable where the defendant's practices, even if faulty, do not harm a plaintiff. *See In re Nosek*, 544 F.3d 34, 49-50 (1st Cir. 2008) (reversing bankruptcy court's issuance of alleged civil contempt sanctions under Section 105(a) where the plaintiff "did not demonstrate here that [defendant]

23

The bankruptcy court's certification order nevertheless maintains that there is "no due process or other concern over its authority to sanction." [Doc. 269, at p.13.] In support, the court cites numerous cases regarding the court's sanctioning authority. [*See id.*] None of the cited cases stand for the proposition that a *class action* is proper vehicle to levy an across-the-board punitive sanction, especially where, as here, not all of the class members suffered actual damage. Indeed, the law is contrary. *See, e.g.*, *Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693, 697-99 (S.D. Fla. 2009) (recognizing that "lower courts may consider potential class damages . . . in conjunction with the plaintiff's actual injury" in making certification determination, and thereafter denying class certification because "grant[ing] the requested class relief would allow this Plaintiff, and his counsel, to dangle the Sword of Damocles over Defendant, without any showing of actual economic harm").

The Article I bankruptcy court lacks authority to impose non-compensatory sanctions that are criminal in nature. *See, e.g., In re Hipp, Inc.*, 895 F.2d 1503, 1515 (5th Cir. 1990). The bankruptcy court's lack of authority presents an additional reason to grant interlocutory review.

accounting practices caused her any economic harm or threatened her right to cure her pre-petition default").
[8] The fact that the bankruptcy court was not exercising any proper civil contempt power also is evidenced by the fact that the bankruptcy court did not refer to any court order or injunction that Wells Fargo violated. *See McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000) (civil contempt requires clear and convincing evidence of a violation of an unambiguous court order). It appears that the bankruptcy court may believe that its statutory contempt power under Section 105(a) may be exercised without the violation of a court order or a statutory injunction. *See In re Thigpen*, 2004 WL 6070299, at *1 (Bankr. S.D. Ala. Aug. 2, 2004) (Mahoney, J.) (declaring that under the statutory contempt power of § 105, a plaintiff is "not require[d]" to show "that any specific court order ha[s] been violated; only that an abuse of process or inappropriate behavior in conjunction with a stay relief order occurred"). The statutory contempt power in Section 105(a) is distinct from the court's inherent contempt power. *See Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996) ("Distinct from the court's inherent powers are statutory contempt powers that § 105(a) grants in the bankruptcy context. . . ."). Those contempt powers may authorize the issuance of contempt sanctions for violation of a court order or a statutory injunction, like the automatic stay. *See id.* Section 105(a), however, only authorizes the issuance of contempt sanctions where an order or injunction (such as a plan injunction under a confirmation order) has been violated. *See Nosek*, 544 F.3d at 49-50 (1st Cir. 2008) (reversing bankruptcy court's contempt sanctions under Section 105(a) where no order or injunction was violated).

### iii.    An immediate appeal will permit resolution of important unsettled legal issues.

As the foregoing analysis shows, the bankruptcy court class certification order leaves the controlling law unsettled in several particulars.  Whether the Rules Enabling Act, due process, or Rule 23 will tolerate the sweeping class certification ruling is open to serious question given what the controlling law provides.  There are conflicts on every level and the prejudice to Wells Fargo from the expansive and unprecedented use of Rule 23 is profound.  And, regarding sanctions, as shown in the preceding section, there is no authority, nor did the bankruptcy case cite any, that class certification is an appropriate vehicle to issue sanctions, regardless of whether the bankruptcy court has the power to sanction in the individual bankruptcy case (as opposed to class action) context.  Indeed, allowing the class certification order to stand on that ground would set a precedent that any court can sanction any conduct through class certification, even if the purported class does not meet class certification requirements.

Finally, as discussed below, all of the issues presented in this appeal are ones "as to which an appellate ruling sooner rather than later will substantially assist the bench and bar . . . ." *See Prado-Steiman*, 221 F.3d at 1275.  Namely, this is the exact type of case used as an example by the Eleventh Circuit in *Prado-Steiman* where the issues presented are sure to arise "simultaneously in related actions involving the same or similarly-situated parties or is one that seems likely to arise repeatedly in the future[,]" since this is the first certification decision in nine similar class actions, two pending in this district and six like it (including two against Wells Fargo) in the other districts of this state.  *See id.*

iv.    The nature and status of this litigation, which has been ongoing since 2004, warrants immediate review, especially where a ruling by the Court decertifying the classes is likely dispositive of this litigation.

The issues in this appeal are particularly developed and suited for immediate appellate review because the parties have already engaged in extensive and costly discovery (including depositions of 19 Wells Fargo employees and lawyers taken over several weeks), there are no relevant motions pending, and this matter has been pending for nine years.  *See Prado-Steiman*, 221 F.3d at 1276 (in deciding whether to review a trial court's certification order, the district court "may take into account such considerations as the status of discovery, the pendency of relevant motions, and the length of time the matter already has been pending.").   There is a substantial and sufficient record from which this Court may "evaluate fully and fairly the class certification decision." See *id.* ("[A] limited or insufficient record may adversely affect the appellate court's ability to evaluate fully and fairly the class certification decision.").   Moreover, a reversal of the bankruptcy court's certification ruling will reduce the complexity of this litigation and materially change the risks, making a more expedited resolution possible.

v.    Early resolution of this dispute may not only facilitate the resolution of this dispute, but also of numerous related disputes.

"[I]f the case is likely to be one of a series of related actions raising substantially the same issues and involving substantially the same parties, then early resolution of a dispute about the propriety of certifying a class may facilitate the disposition of future claims." *Prado-Steiman*, 221 F.3d at 1276.

A ruling now by this Court on class certification will certainly facilitate the disposition of future claims.  This class action is the first of nine "fraud on the court" affidavit class actions filed by the same plaintiffs' counsel based on the defendant's filing of motions for relief from

26

stay and corresponding affidavits in purported class members' bankruptcies.[9]  The other class

actions all are currently pending certification.  Two of the cases, *Taylor v. Chase Home Finance*,

Civil Action No. 06-01139, and *Tate v. Citimortgage*, Civil Action No. 09-01059, are venued in

the U.S. Bankruptcy Court for the Southern District of Alabama.  The remaining six cases, one

each per district against Wells Fargo, Chase Home Finance, and Citimortgage, are pending in the

United State Bankruptcy Courts for the Middle and Northern Districts of Alabama.  Thus, if the

Court determines that class certification is inappropriate, it will no doubt affect the actions

currently pending in this district and possibly in the other districts, and could potentially resolve

those cases altogether.


D.     Judge's Orders

Pursuant to *Federal Rule of Bankruptcy Procedure* 8003(a), a copy of the bankruptcy

court's January 8, 2013 class certification order (doc. 269), along with the court's November 7,

2011 order denying class certification (doc. 219), portions of which were incorporated into the

January 8, 2013 order, are attached hereto as Exhibits A and B.

---

[9] *Taylor v. Chase Home Finance*, Civil Action No. 06-01139 (Bankr. S.D. Ala.); *Tate v. Citimortgage*, Civil Action No. 09-01059 (Bankr. S.D. Ala.); *Vereen v. Wells Fargo*, Civil Action No. 09-03033 (Bankr. M.D. Ala.); *Woodruff v. Chase Home Finance*, Civil Action No. 09-08014 (Bankr. M.D. Ala.); *McBride v. Citimortgage*, Civil Action No. 09-01061 (Bankr. M.D. Ala.); *Mellown v. Wells Fargo*, Civil Action No. 09-70026 (Bankr. N.D. Ala.); *Canty v. Chase Home Finance*, Civil Action No. 09-70028 (Bankr. N.D. Ala.); *Holman v. Citimortgage*, Civil Action No. 09-70037 (Bankr. N.D. Ala.).

<u>Conclusion</u>

In sum, all the factors in *Prado-Steiman* point towards granting this request to appeal.

Wells Fargo respectfully requests that the District Court grant its motion for leave and assume

jurisdiction over this interlocutory appeal.

<u>s/ Henry Callaway</u>
HENRY A. CALLAWAY, III
RODNEY R. CATE
JENNIFER S. MORGAN
Attorneys for Defendant Wells Fargo Bank, N.A.

OF COUNSEL:
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
(251) 432-5511

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing pleading has been served on counsel for plaintiffs by electronic service and also by first-class mail on this the 29th day of January, 2013.

<u>s/ Henry Callaway</u>

1634737_1.docx

28